UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

GARY R. ROTENBERG and JANE J. DICKSON,                    08 CIV 4703

                              Plaintiffs,                 Judge Robinson

              - against –

THE TOWN OF MAMARONECK,
RONALD A. CARPANETO, (individually),
JAYNE GREENWALD, and
BLAINE GREENWALD,

                              Defendants.
------------------------------------------------------------------- X


## MEMORANDUM OF LAW


                    Respectfully submitted,

                    VOUTÉ, LOHRFINK, MAGRO & COLLINS, LLP
                    Attorneys for Defendants GREENWALD
                    170 Hamilton Avenue
                    White Plains, New York 10601-1789
                    Tel.: (914) 946-1400
                    Fax:  (914) 946-8024


RALPH F. SCHOENE,
*Of Counsel*

# TABLE OF CONTENTS

|  | Page No. |
|---|---|
| TABLE OF AUTHORITIES.................................................... | i-v |
| NATURE OF ACTION      ............................................. | 1 |
| PROCEDURAL HISTORY.................................................. | 1 |
| FACTS      ............................................. | 2 |
| ALLEGATIONS OF THE COMPLAINT ............................................ | 7 |

**POINT I**
PLAINTIFFS'S COMPLAINT MUST BE
DISMISSED ON THE GROUNDS THAT THE
COMPLAINT FAILS TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED.............................. 9

Violation of Federal Right Requirement...................................... 10

Under Color of State Law Requirement...................................... 11

**POINT II**
THE ONLY CLAIMS BEING ASSERTED
AGAINST DEFENDANTS JAYNE GREENWALD
AND BLAINE GREENWALD ARE STATE LAW
CLAIMS WHICH CANNOT, AS A MATTER OF LAW,
BE MAINTAINED PURSUANT TO NEW YORK LAW............... 13

Malicious Prosecution................................................ 13

Interference With Prospective Advantage.................................... 16

Prima Facie Tort.................................................... 18

Injurious Falsehood................................................. 21

Negligence....................................................... 24

CONCLUSION      ..................................................... 25

# TABLE OF AUTHORITIES

**Page No.**

Amodei v. New York State Chiropractic Ass'n., 160 AD2d 279, 553 NYS2d 713
(1st Dept, 1990) affirmed 77 NY2d 891, 568 NYS2d 900 (1991)............................ 19

A.S. Randall, Inc. v. Hyster Co., 3 NY2d 369, 165 NYS2d 4751 (1957)................. 17

ATI, Inc. v. Ruder & Finn, Inc., 42 NYS2d 454, 398 NYS2d 864 (1977)............... 19

Basicorp Ltd. v. Kahn, 270 AD2d 147, 736 NYS2d 708 (3rd Dept, 2002)...... 17

Bassim v. Hassett, 184 AD2d 908, 585 NYS2d 566 (3rd Dept, 2003).................... 18

Brandt v. Winchell, 3 NY2d 628, 170 NYS2d 828 (1958)................................ 19

Brown v. Bethlehem Terrace Associates,
136 AD2d 222, 525 NYS2d 978 (3rd Dept, 1988)......................................... 21

Brown v. Sears Roebuck & Co., 297 AD2d 205,
746 NYS2d 141 (1st Dept, 2002)......................................................... 13

Burns Jackson Miller Summit & Spitzer v. Lindner,
59 NY2d 314, 464 NYS2d 712 (1983)..................................................... 18

Burns Jackson Miller Summit & Spitzer v. Lindner,
88 AD2d 50, 452 NYS2d 80
(2nd Dept, 1982) affirmed 59 NY2d 314, 464 NYS2d 712 (1983)..................... 16

Cantalino v. Danner, 96 NY2d 391, 727 NYS2d 405 (2001)..................... 13

Carvel Corp. v. Noonan, 3 NY3d 182, 785 NYS2d 359 (2004)
280 F.Sup. 2d 208 (S.D.N.Y. 2003), affd. 99 Fed. Appx. 259......................... 17

Ciambriello v. County of Nassau 292 F. 3d  307 (2d Cir. 2002)....................... 12

Coley v. Arnot Ogden Memorial Hospital,
107 AD2d 67, 485 NYS2d 867  (3rd Dept, 1985)...................................... 19

Collision Plan Unlimited, Inc. v. Bankers Trust Co.,
63 NY2d 827, 482 NYS2d 252 (1984)................................................... 21

i

Page No.

Concourse Rehabilitation and Nursing Center Inc. v. Whalen,
249 F.3d 136 (2nd Cir. 2001)...................................................    10

Cunningham v. Hagedorn, 72 AD2d 702, 422 NYS2d 70 (1st Dept, 1979)........    21

Curiano v. Suozzi, 63 NY2d 113, 480 NYS2d 466 (1984)...........................    13,18

Davidson v. Mann, 129 F.3d 700 (2nd Cir. 1997)..................................    10

Davis v. Williams, 59 AD2d 660, 398 NYS2d 281 (1st Dept, 1977)
affirmed 44 NY2d 882, 407 NYS2d 630)...........................................    4

Dempsey v. Masto, 83 AD2d 725, 442 NYS2d 627 (3rd Dept, 1981)
affirmed 56 NY2d 665, 451 NYS2d 731 (1982)...................................    13

Drug Research Corp. v. Curtis Publishing Co.,
7 NY2d 435, 199 NYS2d 33 (1960)................................................    21

DuChateau v. Metro-North Commuter Railroad,
253 AD2d 128, 688 NYS2d 12 (1st Depot, 1999)...............................    13

Feingold v. New York, 366 F.3d 138 (2nd Cir., 2004)...........................    10

Fine v. Dudley D. Doernberg & Co., Inc.,
203 AD2d 419, 610 NYS2d 566 (2nd Dept, 1994)...............................    17

Fink v. Shawangunk Conservancy Inc.,
15 AD3d 754, 790 NYS2d 249 (3rd Dept, 2005)...............................    21

Fisk v. Letterman, etal, 401 F.Supp 2d 362 (SDNY 2005).......................    12

Freihofer v. Hearst Corp., 65 NY2d 135, 490 NYS2d 735 (1985)...............    18

Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.
50 NY2d 183, 428 NYS2d 628 (1980)...........................................    16

Herilhy v. Metropolitan Museum of Art,
214 AD2d 250, 633 NYS2d 106 (1st Dept, 1995)...............................    17

Hessel v. Goldman, Sachs & Co., 281 AD2d 247, 722 NYS2d 21
(1st Dept, 2001)................................................................    19

ii

                                                                                    **Page No.**

John W. Lovell Co. v. Houghton, 116 NY520...................................                22

Jones v. National Communication & Surveillance Networks,
409 F. Supp 2d 456 (SDNY 2006).................................................             11

Jurlique, Inc. v. Austral Biolab Pty Ltd.,
187 Ad2d 637, 590 NYS2d 235 (2nd Dept, 1992)..............................               22,23

Kazer v. Dwelle-Kaiser Co.,
222 AD350, 225 NYS722 (4th Dept, 1927)......................................             14

Lampert v. Edelman, 24 AD2d 562, 261 NYS2d 450 (1st Dept, 1965)........                  21

Landnor-St. Gelais v. Albany International Corp.,
307 AD2d 671, 763 NYS2d (3rd Dept, 2003)....................................             19

Leather Dev. Corp. v. Dun & Bradstreet Inc.,
15 AD2d 761, 224 NYS2d 513  (1st Dept, 1962)
affirmed 12 NY2d 909, 237 NYS2d 1007 (1963)...............................                 20

Liuer v. Hair Anew, No. 99 Civ. 11117,
2000 WL 223828 (SDNY, 2000)..................................................              11

Loeb v. Teitelbaum, 77 AD2d 92, 432 NYS2d 487 (2nd Dept, 1980)........                   14

Lynch v. McQueen, 309 AD2d 790, 765 NYS2d 645 (2nd Dept, 2003)......                     19

Mack, Miller Candle Co. v. MacMillan, 239 App. Div. 738, 269 NYS 33,
affirmed 266 NY 489 (1934)......................................................           22

Martinez v. Schenectady, 97 NY2d 78, 735 NYS2d 868 (2001)..............                    13

Maxwell v. Henry, 815 F. Supp 213 (SD Tex 1993)...........................                 10

Mesiti v. Wegman, 307 Ad2d 339, 763 NYS2d 67 (2nd Dept, 2003)..........                  13

Mione v. McGrath, 435 F. Supp 2d 266 (SDNY 2006).........................                  13

Morris Hayes v. Board of Educ. of Chester Union
Free School Dist., 423 F.3d 153 (2nd Cir. 2005)................................          10

Page No.

Morrison v. National Broadcasting Co.,
19 NY2d 735, 280 NYS2d 641 (1967)..................................... 20

NBT Bancorp Inc. v. Fleet/Norstar Financial Group,
87 NY2d 614, 641 NYS2d 581 (1996)..................................... 17

Nordelli v. Stamberg, 44 NY2d 500, 406 NYS2d 443 (1978).............. 15

O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413 (SDNY 2004)... 11

Pacheco v. United Medical Associates, P.C.,
305 AD2d 711, 759 NYS2d 556  (3rd Dept, 2003)........................... 17

Palermo v. Rockefeller, 323 F. Sup. 478 (SDNY 1971)....................... 11

Pangeburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)......................... 12

Parkin v. Cornell University, Inc., 78 NY2d 523,
577 NYS2d 227 (1991)....................................................... 14

Patterson v. County of Oneida, 375 F. 3d 206 (2nd Cir. 2004)................ 10

Prowisor v. Bon Ton, Inc., 426 F. Supp 2d 165 (SDNY 2006)............... 12

Pullnow v. Glennon, 757 F.2d 496 (2d Cir. 1985)............................. 10

Quigley v. Auburn, 267 AD2d 978, 701 NYS2d 580 (4th Dept, 1999)...... 13

Rawson v. Leggett, 184 NY504 (1906)........................................ 14

Reardsley v. Kilmer, 236 NY 80 (1923)................................... 19

Reinforce Inc. v. Birney, 308 NY164 (1954).................................. 19

Rodriguez v. Weprin, 116 F.3d 62 (2nd Cir. 1997)............................ 10

Saunders v. Washington, 255 QD2d 788, 680
NYS2d 743 (3rd Dept, 1998).................................................. 13

Shapiro v. Nassau, 202 AD2d 358, 609 NYS2d 234 (1st Dept, 1994)..... 15

Smith v. Livingston, 69 AD2d 993, 416 NYS2d 130 (4th Dept, 1979)..... 19

**Page No.**

Varella v. Investors Inc. Holding Corp.,
185 AD2d 309, 586 NYS2d 272 (2nd Dept, 1992)............................        18,20

Velez v. Levy, 401 F.3d 75 (2nd Circuit, 2005)................................        10

Villanova Estates, Inc. v. The Fieldston Property Owners Association,
Inc., 23 AD2d 160, 803 NYS2d 521 (1st Dept, 2005).....................        22

Washington v. County of Rockland, 373 F.3d 310 (2nd Cir., 2004).........        10

Wesley Health Care Center, Inc. v. DeBuono,
244 F.3d 280 (2nd Cir. 2001)..................................................        10

WFB Telecommunications, Inc. v. NYNEX Corp.,
188 AD2d 257, 590 NYS2d 460 (1st Dept, 1992)..........................        17

v

## NATURE OF ACTION

Plaintiffs's complaint, which is designated as Exhibit "A" in the accompanying packet of exhibits, ostensibly seeks to assert one claim pursuant to 42 United States Code §1983, that being a cause of action alleging a violation of plaintiffs' due process rights in connection with the filing of a summons and information by defendants Ronald Carpaneto and Town of Mamaroneck. A series of state law claims also seek to be asserted, five against the Greenwalds and two against Mr. Carpaneto and the Town. As is demonstrated below, the complaint merely sets forth allegations surrounding plaintiffs's attempt to sell their home without even providing the slightest hint of a federal civil rights violation allegedly committed by the Greenwalds and without setting forth facts to support any state law claims. As such, plaintiffs's complaint must be dismissed pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

Plaintiffs previously commenced an action in Supreme Court, Westchester County which attempted to assert several causes of action pursuant to state law. That complaint, a copy of which is contained in the packet of exhibits as Exhibit "B", is similar to the complaint filed in federal court, except that the federal complaint adds paragraphs which contain allegations concerning the Greenwalds's state of mind in connection with a letter dated April 14, 2006 and an engineer's report dated June 14, 2006, and contains allegations regarding the jurisdiction of the federal court to adjudicate this case. Motions to dismiss the state court action were filed on behalf of all defendants;

those motions were granted by Hon. Richard Liebowitz in a decision/order dated January 16, 2008 (Exhibit "C").

## FACTS

Defendants Blaine and Jayne Greenwald reside at 2 Lafayette Road, Larchmont, New York, which is actually within the Town of Mamaroneck. As explained by Mr. Greenwald in his affidavit, their parcel of property has the shape of a trapezoid, the base of which forms their property's boundary with Lafayette Road while the top of the trapezoid forms the boundary with the property formerly owned by plaintiffs. There is a significant difference in elevation between the two properties with the Rotenbergs' property being approximately 15 to 20 feet higher than the Greenwald's back yard. Separating the two parcels is a massive retaining wall which spans the entire length of the boundary between the two parcels. The length of that retaining wall is approximately 45 feet. At its highest point, approximately 20 feet, the wall is also at its closest proximity to the back of the Greenwald house structure, which is only 20 feet away. Not surprisingly, the Greenwalds had some concern about the wall's integrity, for if it were to collapse, or even partially collapse, it would crash into the Greenwalds' house.

The retaining wall sits entirely on what was formerly the Rotenbergs' property and was owned by them.

Attached to the accompanying packet of exhibits as Exhibit "D" are several photographs which were taken in April, 2006 which accurately depict the condition of the wall. (The wall actually has two components, a lower portion consisting of a combination of stone and mortar and an upper portion comprised of a concrete block extension which was built on top of the stone/mortar portion). As these photographs demonstrate, there are several cracks throughout the expanse of the wall at various places

on both the concrete block and stone sections of the wall. One of those cracks has a zigzag type of pattern extending from the top of the concrete block section to where the concrete block section meets the stone section. Throughout the stone block section there are several steel tieback plates, which apparently serve a stabilizing function. They appear to have rusted.

As set forth by Mr. Greenwald in his affidavit, the most worrisome aspect of the wall is that the concrete block section has shifted over time, thereby bringing about a large gap between the concrete block section and the stone section and a three to five inch overhang. There is also an obvious lean of the wall toward the Greenwalds' property. Even a casual glance at the wall is enough to cause one to at least wonder about its structural integrity.

On or about April 6, 2006, Mr. Rotenberg came to the Greenwalds' home and requested that they allow a mason access to their property for - as they understood it- the purpose of making cosmetic repairs to the wall. Accordingly, it was Mr. Rotenberg who initiated attention to the wall. Mr. and Mrs. Greenwald discussed this and in so doing came to realize that a mason might cover over the wall's obvious deficiencies thereby compromising the ability of an engineer to evaluate the structural integrity and soundness of the wall. As such, they requested of Mr. Rotenberg that he obtain an engineer's report before a mason undertook any work that might obfuscate the true condition of the wall. In so doing, they indicated that this was an important safety issue for them and the Rotenbergs. Mr. Rotenberg adamantly refused the request to obtain an engineer's report. At that point the Greenwalds contacted the Town of Mamaroneck in order to discuss whether the wall should be evaluated by an engineer. They were put in contact with the Town's building inspector, Ronald Carpaneto, who suggested that they send a letter to the Rotenbergs explaining their position and to "cc" him a copy. The Greenwalds therefore sent a letter to the Rotenbergs, which is dated April 14, 2006, expressing their concern and offering to allow access to their property by an engineer to assess the structural integrity of the wall. A copy of that letter is provided as Exhibit "E".

- 3 -

The letter of April 14, 2006 was written to document the Greenwalds' concern about the structural integrity of the wall and to express again that it was important for an engineer to evaluate the wall's structural integrity before cosmetic repairs were made. Neither Mr. Greenwald nor Mrs. Greenwald harbored any intention to impair the plaintiffs's ability to sell their home and/or to decrease the value of the selling price, nor did they seek to coerce plaintiffs into constructing a more aesthetically pleasing retaining wall as alleged in the complaint.

When plaintiffs declined to have an engineer inspect the wall, the Town advised the Greenwalds to retain a licensed engineer and recommended Benedict A. Salanitro, P.E., who is the building inspector for the Village of Scarsdale. Mr. Salanitro authored a report dated June 14, 2006, which he sent to Mr. Carpaneto of the Town of Mamaroneck in which he expressed his professional opinion that extensive repairs to the wall were needed. A copy of Mr. Salanitro's report is annexed as Exhibit "F". The Town of Mamaroneck independently retained two engineers, Anthony Oliveri and Bond Davis, III, to evaluate the wall. Mr. Oliveri issued a report dated October 26, 2006 in which he recommended that a structural engineer specialist be retained to evaluate the structural integrity of the wall (Exhibit G) and Mr. Davis (a structural engineer) issued a report dated November 26, 2006 in which he concluded that the wall had undergone significant and unusual displacement requiring repairs to stabilize it (Exhibit H). After plaintiffs sold their home to Jane Evans and Douglas Mason, Ms. Evans and Mr. Mason retained Vincent Masucci to create plans to stabilize the wall – his application for a work permit specifically states that the existing wall is not stable and requires additional re-enforcing, and that the tie anchor rods are rusting and no longer reliable. (Exhibit I).

Included among the packet of exhibits as Exhibit "J" is a copy of an affidavit of defendant Ronald A. Carpaneto, Director of Building Enforcement and Land Use Administrator for the Town of Mamaroneck. His affidavit corroborates the affidavit of Blaine Greenwald and also contains several statements which supports the Greenwalds's motion for dismissal of plaintiffs's complaint, among them being the following:

(a)      In paragraph 4 of the affidavit, Mr. Carpaneto states that he is authorized by the Town to issue notices of violation and, in the event that the condition is not corrected, he is authorized by the Town to issue a summons.

(b)      In paragraph 5, Mr. Carpaneto states that he was contacted by Jayne and Blaine Greenwald in April of 2006 because the Greenwalds were concerned about the structural integrity of the retaining wall between their property and property formerly owned by plaintiffs.

(c)      In paragraph 7, Mr. Carpaneto states that after visiting the property he determined that the wall did not appear to be safe and could potentially cause damage to the Greenwalds's property or result in personal injury.

(d)      In paragraph 9, Mr. Carpaneto states that based on his opinion it was in the public's best interest that the wall be repaired, and so he issued a Notice of Violation to the Rotenbergs which is dated June 23, 2006.

(e)      In paragraph 11, Mr. Carpaneto indicates that although plaintiffs were given until July 3, 2006 to remedy the condition, the Town gave them much more time to do so and it was not until September 29, 2006 that a final notice of violation was sent to the Rotenbergs.

(f)      In paragraph 13, Mr. Carpaneto states that a summons was issued by the Town to the Rotenbergs on October 17, 2006 for their failure to correct the violation. A copy of the summons and information is provided as Exhibit K.

A trial was conducted in Town Court on November 20, 2006. Mr. Carpaneto's affidavit is consistent with testimony given by him at the trial, as demonstrated by the following excerpts found in the trial transcript (Exhibit L).

(a)      Page 15: The Greenwalds called Mr. Carpaneto asking that the wall be inspected because they thought it was not safe.

(b)      Pages 17-18: Mr. Carpaneto and David Goesel, the Town Engineer, looked at the wall and felt it didn't look right.

(c)      Page 19: The top part of the wall was observed to have shifted over the stone edge, and the wall was observed to be moving out, lifting and leaning.

(d)    Pages 22 to 23: Anthony Oliveri, a consulting engineer, was subsequently asked to the look at the wall in order to provide another opinion, and he did so a week or so later.

(e)    Page 41: It is the Town's policy to issue a summons if the homeowner does not correct the violation.

(f)    Page 41: Mr. Carpaneto had no conversation with the owner regarding  the violation.

(g)    Page 45: The summons was issued  because the homeowners needed to be nudged.

(h)    Page 46: There had been some indication from Mary Beth Mullins, who was representing plaintiffs at that time, that the engineer's report would be forthcoming but when it did not come the summons was issued.

Neither Mr. Greenwald nor Mrs. Greenwald ever requested, or even suggested, that the Town issue a violation notice to the Rotenbergs. Furthermore, at no time did the Town consult with them regarding whether to issue either of the two violation notices. Similarly,  neither Mr. Greenwald nor Mrs. Greenwald ever requested, or even suggested, that the Town issue a summons to the Rotenbergs and at no time did the Town consult with them regarding whether to issue the summons.

The triggering event for the entire episode was Mr. Rotenberg's peculiar request that a mason be allowed to enter the Greenwalds's property so that the mason could perform some sort of patching work on the retaining wall, and then inexplicably refusing the Greenwalds's request that a structural engineer first be retained to assess the structural integrity of the wall.  When the Rotenbergs unreasonably refused to even consider having an engineer evaluate the wall, the Greenwalds, quite understandably, wondered why, and therefore called the Town for advice. At the suggestion of the Town, the Greenwalds retained Benedict Salanitro to inspect the wall.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs's complaint asserts a series of allegations within the background section of the complaint, and then goes on to enumerate five causes of action against the Greenwalds and three causes of action against the Town of Mamaroneck and Ronald A. Carpaneto.  These can be divided into the following categories:

a)  Allegations regarding the sale of plaintiffs's home:  It is alleged that plaintiffs resided at 5 Huguenot Drive, Larchmont, New York from August, 1988 (paragraph 24) until July 7, 2006 (paragraph 25), that on or about March 22, 2006, they listed their home for sale with Coldwell Banker (paragraph 16), that the asking price of the house started out at $1,995,000.00 (paragraph 37) which thereafter was lowered at various points in time, first to $1,895,000.00 on April 17, 2006 (paragraph 53), then to $1,795,000.00 on May 9, 2006 (paragraph 34), then to $1,695,000.00 on June 14, 2006 (paragraph 53), and then to $1,550,000.00 on September 14, 2006 (paragraph 90)  The complaint contains no allegations that these reductions in the asking price were the result of any conduct attributable to the Greenwalds.

b)  Allegations regarding the Greenwalds's letter of April 14, 2006:  It is alleged that the Greenwalds wrote a letter dated April 14, 2006 expressing their concern about the structural integrity of the retaining wall (paragraph 38), that the Greenwalds allegedly had no reason to believe that the retaining wall was in danger of collapse (paragraph 39), that the Greenwalds omitted from that letter that the condition of the retaining wall had remained unchanged for 17 years (paragraph 42), that the Greenwalds knew that plaintiffs's home was for sale (paragraph 43), that the Greenwalds and Ronald Carpaneto spoke about the wall (paragraph 44), that the Greenwalds sent a copy of the April 14, 2006 letter to Mr. Carpaneto (paragraph 49) and that the purpose of the letter was to impair plaintiffs's ability to sell their home (paragraph 50), to impose economic distress and to coerce plaintiffs into constructing a more esthetically pleasing retaining wall (paragraph 52).  There is no allegation that by sending the April 14th letter that the Greenwalds sought to deprive plaintiffs of a federal right.

c)      Allegations regarding Engineer Salanitro's report of June 14, 2006: It is alleged that the Greenwalds retained Benedict Salanitro to obtain a benefit and to cause plaintiffs to suffer a detriment (paragraph 58), that the Greenwalds caused Mr. Salanitro to send his June 14, 2006 report to the Town (paragraph 59) expecting that it would be filed with the Town and hence available to prospective purchasers (paragraph 64), that the report omitted that the wall had remained unchanged for 17 years (paragraph 60) and falsely stated that plaintiffs intended to make cosmetic repairs to the wall (paragraph 61), that the purpose of the report was to impair the ability of plaintiffs to sell their home so as to cause a decrease in the value of the house (paragraph 63) and economic duress (paragraph 65).   There is no allegation that the Greenwalds contributed to the writing of this report, or that Mr. Salanitro's report was issued to deprive plaintiffs of a federal right.

d)      Allegations surrounding issuance of the Notice of Violation dated June 23, 2006:  It is alleged that Ronald Carpaneto, an employee of the Town of Mamaroneck, improperly issued a Notice of Violation with respect to the retaining wall without a good faith basis to do so (paragraphs 68 – 78).   It is further alleged that the Greenwalds were aware that the Notice of Violation had been issued (paragraph 79) and that all defendants were aware that plaintiffs would be obligated to disclose to potential purchasers the existence of the Notice of Violation (paragraphs 80 – 84).

e)      Allegations regarding plaintiffs's retention of counsel to address the Notice of Violation:  It is alleged that plaintiffs retained two separate attorneys, each of whom had communications with Ronald Carpaneto regarding the propriety of the Notice of Violation (paragraphs 85 – 89, 91).

f)      Allegations regarding issuance of Notice of Violation dated September 29, 2006: It is alleged that Ronald Carpaneto, without a good faith basis to do so, issued a second Notice of Violation on September 29, 2006 (paragraphs 92 – 98).

g)      Institution of criminal prosecution:  It is alleged that on October 17, 2006 a summons and criminal information was issued by Ronald Carpaneto charging plaintiffs with a violation of Section 302.7 of the Property Maintenance Code, that the issuance of the summons and information was done without a good faith basis to do so

and without probable cause, and that as a result of a trial conducted on November 20, 2006 the charges were dismissed (paragraphs 99 – 110).

An examination of plaintiffs's complaint reveals that the Background Facts do not contain allegations that the Greenwalds contacted any prospective purchasers of plaintiffs's home, or that the Greenwalds were aware of the contract which plaintiffs entered into with Douglas Mason and Jane Evans, that the reduction in the asking price was due to anything attributable to the Greenwalds, that the contract between the Rotenbergs and Mr. Mason/Ms. Evans was breached, or that the Greenwalds undertook any action of any kind after June 14, 2006.

## POINT I

### AS TO DEFENDANTS BLAINE GREENWALD AND JAYNE GREENWALD, THE COMPLAINT MUST BE DISMISSED ON THE GROUNDS THAT THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

It appears that plaintiffs seek to maintain this action pursuant to 42 USC §1983, which provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any act of congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

Accordingly, by the plain terms of this statute, a complaint seeking to assert a claim pursuant to Section 1983 must allege that 1) some person has deprived the plaintiff of a right secured by the Constitution or laws of the United States (i.e., a federal right) and 2) the person who has deprived the plaintiff of that right acted under color of state law. Velez v. Levy, 401 F.3d 75 (2nd Circuit, 2005); Washington v. County of Rockland, 373 F.3d 310 (2nd Cir., 2004); Feingold v. New York, 366 F.3d 138 (2nd Cir., 2004).

**Violation of Federal Right Requirement**

Section 1983 is not itself a source of a substantive right; it merely provides a method for vindicating federal rights elsewhere conferred, Patterson v. County of Oneida, 375 F. 3d 206 (2nd Cir. 2004), and hence authorizes actions to enforce rights of individuals under federal statutes and the United States Constitution. Morris Hayes v. Board of Educ. of Chester Union Free School Dist., 423 F.3d 153 (2nd Cir. 2005). Stated another way, Section 1983 provides a cause of action for violation of federal statutes or the United States Constitution; to seek redress through Section 1983, however, plaintiff must assert the violation of a federal right, not merely a violation of federal law. Concourse Rehabilitation and Nursing Center Inc. v. Whalen, 249 F.3d 136 (2nd Cir. 2001). When a plaintiff asserts the violation of a federal statute, the plaintiff must demonstrate that the violation of federal law also amounted to a violation of a federal right possessed by plaintiff. Wesley Health Care Center, Inc. v. DeBuono, 244 F.3d 280 (2nd Cir. 2001). If there is no violation of a federal right, there is no basis for Section 1983 liability, for a violation of state law is not cognizable under Section 1983. Pullnow v. Glennon, 757 F.2d 496 (2d Cir. 1985). It therefore follows that in order to state a civil rights claim under Section 1983 a complaint must contain specific allegations of fact which set forth the deprivation of a right secured by the Constitution or laws of the United States which has taken place under color of state law. Rodriguez v. Weprin, 116 F.3d 62 (2nd Cir. 1997); Davidson v. Mann, 129 F.3d 700 (2nd Cir. 1997). See also Maxwell v. Henry, 815 F. Supp 213 (SD Tex 1993), where the court stated that plaintiffs in Section 1983 actions must plead all facts with particularity and demonstrate specifically how their federal rights have been violated by each defendant.

A review of plaintiffs's complaint reveals that it fails to allege that either Jane Greenwald or Blaine Greenwald deprived plaintiffs of any federal right – no provision of the United States Constitution is mentioned and not a single federal statute conferring a federal civil right is cited.   The only paragraph which makes reference to the violation of a federal right is paragraphs 151 and 152, where plaintiffs allege only that defendants Carpaneto and Town of Mamaroneck deprived them of property without due process in violation of the Fourth and Fourteenth Amendments to the United States Constitution. As such, plaintiffs's complaint fails to state a federal claim as to the Greenwalds.

**Under Color of State Law Requirement**

Section 1983 does not extend to all controversies between individual citizens, but only to deprivations of constitutional rights (or rights conferred by federal statute) arising from the actions of persons acting under color of state law.  Palermo v. Rockefeller, 323 F. Sup. 478 (SDNY 1971).  A plaintiff fails to state a claim under Section 1983, and his complaint must be dismissed, when he does not sufficiently allege that the defendant's allegedly wrongful action was an exercise of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413 (SDNY 2004).  Accordingly, defendants in actions alleging claims pursuant to Section 1983 are almost invariably employees of a political subdivision of a state, and so claims under Section 1983 are usually aimed at state action and state actors.  Liuer v. Hair Anew, No. 99 Civ. 11117, 2000 WL 223828 (SDNY, 2000).

Private entities can be subject to liability under Section 1983 only if they jointly engaged with state officials in the challenged action to deny a person a federal right; for such a nexus between private and state entities to exist, the state must have exerted its coercive power over, or provided significant encouragement to, the private individual. Jones v. National Communication & Surveillance Networks, 409 F. Supp 2d 456 (SDNY 2006).   In order to comply with this high standard, a complaint must allege 1. an agreement between a state actor and private party; 2. to act in concert to inflict an unconstitutional injury; and 3. an overt act done in furtherance of that goal causing

damages. Ciambriello v. County of Nassau 292 F. 3d 307 (2d Cir. 2002), Pangeburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999). Although a complaint need not list the place and date of defendant's meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action which amount to a meeting of the minds. Fisk v. Letterman, et al, 401 F.Supp 2d 362 (SDNY 2005). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. Fisk v. Letterman, supra.

A review of plaintiffs's complaint reveal that it fails to allege that the actions of Jayne Greenwald and Blaine Greenwald were taken under color of state law. (The complaint alleges in paragraph 14 that Ronald Carpaneto acted under color of state law but no such allegation was made against the Greenwalds). There is no dispute that neither Mr. nor Mrs. Greenwald is a Town employee, or that either of them was somehow some kind of agent of the Town. The allegedly improper actions attributed to the Greenwalds consist only of failing to disclose that the wall had been in the same condition for some 17 years - this is woefully inadequate to establish that a nexus developed between the Greenwalds and the Town. All the Greenwalds did was provide information to the Town at the Town's request, which the Town processed. As acknowledged by Mr. Carpaneto in his affidavit (Exhibit J), the decision to file the notices of violation and the criminal summons/information rested exclusively with Mr. Carpaneto and the Town.

Applying these principles, the courts of this circuit have repeatedly dismissed cases against individual defendants in cases where the private individual merely provided the state actor with information. See, for example, Prowisor v. Bon Ton, Inc., 426 F. Supp 2d 165 (SDNY 2006), where a store was held not liable under Section 1983 for its private security guard's conduct in detaining store customers whom they suspected of shoplifting and contacting the police to have the shoplifter arrested; Fisk v. Letterman, 401 F. Supp 2d 362 (SDNY 2005), where a private party who called police officers for assistance and provided them with information that led to an arrest of an individual was held not to have become a state actor and hence not liable under Section 1983 to the

person detained, and <u>Mione v. McGrath,</u> 435 F. Supp 2d 266 (SDNY 2006), where hotel employees did not act "under color of state law" when they contacted State Child Welfare authorities to report suspected child abuse by a hotel guest, and thus hotel and employees were not subject to liability under Section 1983 for guest's subsequent arrest and prosecution.

**POINT II**

**THE ONLY CLAIMS BEING ASSERTED AGAINST DEFENDANTS JAYNE GREENWALD AND BLAINE GREENWALD ARE STATE LAW CLAIMS WHICH CANNOT, AS A MATTER OF LAW, BE MAINTAINED PURSUANT TO NEW YORK LAW**

**Malicious Prosecution**

The elements of a malicious prosecution action are 1) judicial proceeding instituted by the defendant, 2) brought without probable cause, 3) with malice 4) that terminates in favor of plaintiff. <u>Martinez v. Schenectady</u>, 97 NY2d 78, 735 NYS2d 868 (2001); <u>Cantalino v. Danner</u>, 96 NY2d 391, 727 NYS2d 405 (2001); <u>Curiano v. Suozzi</u>, 63 NY2d 113, 480 NYS2d 466 (1984).

Plaintiff must plead and prove that the defendant was responsible for the institution of the action against plaintiff. <u>Dempsey v. Masto</u>, 83 AD2d 725, 442 NYS2d 627 (3rd Dept, 1981) affirmed 56 NY2d 665, 451 NYS2d 731 (1982); <u>Mesiti v. Wegman</u>, 307 Ad2d 339, 763 NYS2d 67 (2nd Dept, 2003), and there will be no liability if defendant merely reported an incident to the police and took no further active part in the criminal proceeding, such as giving advice and encouragement or importuning the authorities to act. <u>Brown v. Sears Roebuck & Co.</u>, 297 AD2d 205, 746 NYS2d 141 (1st Dept, 2002); <u>Quigley v. Auburn</u>, 267 AD2d 978, 701 NYS2d 580 (4th Dept, 1999). Thus, reporting a crime to the police and giving testimony are insufficient. <u>DuChateau v. Metro-North Commuter Railroad</u>, 253 AD2d 128, 688 NYS2d 12 (1st Depot, 1999); <u>Saunders v. Washington</u>, 255 QD2d 788, 680 NYS2d 743 (3rd Dept, 1998). In this case, plaintiffs's

- 13 -

complaint alleges that Mr. Carpaneto initiated the proceeding, something which Mr. Carpaneto confirmed in his affidavit.   (See Exhibit K for a copy of the summons and information).

Plaintiff must also plead and prove that the judicial proceeding was commenced without probable cause.  Whether probable cause existed is to be determined as of the time that the prosecution was initiated.  Rawson v. Leggett, 184 NY504 (1906).  Probable cause is to be determined on the basis of the facts then known to defendant or which defendant reasonably believed from appearances or from information furnished to him. Parkin v. Cornell University, Inc., 78 NY2d 523, 577 NYS2d 227 (1991); Loeb v. Teitelbaum, 77 AD2d 92, 432 NYS2d 487 (2nd Dept, 1980).  Favorable termination is not evidence of lack of probable cause.  Kazer v. Dwellle-Kaiser Co., 222 AD350, 225 NYS722 (4th Dept, 1927).  The evidence before this court overwhelmingly establishes that probable cause existed for Mr. Carpaneto to issue the summons.  First of all, Town Justice Jean Marie Brescia observed, as reflected on page 171 of the trial transcript, that "... The wall looks troubling to me..." and on page 173 she exhorted the parties "... to work together in the future" and then "... encouraged the building department to – what could I say, keep an eye on this property...".  Secondly, several professionals examined the wall prior to the trial and determined that in their opinion the wall was dangerous and in need of repair.  These include Benedict A. Salanitro, P.E., who opined in his June 14, 2006 report that the wall shows obvious signs of distortion, delamination of stone, water damage, rusting of steel tie-backs and upper wall failure, and hence requires extensive repairs.  Furthermore, the report of Grigg & Davis Engineering, P.C., which is annexed as Exhibit H, concludes that the tie-back system no longer has the intended structural capacity to stabilize the mortared rubble stone retaining wall, that water is seeping through  the original mortar joints making the structural integrity and safety of the mortared rubble stone retaining wall questionable and that the concrete restraining wall has undergone significant and unusual displacement.  The report goes on to make nine recommendations, and contains the ominous warning that until all the recommendations are completed the retaining wall is dangerous.  This is echoed by the following comments

which appear in plans submitted by Vincent Masucci, P.E., (Exhibit I) to re-enforce the existing retaining wall:

a)    "In the Existing Stone Wall Calculations section: The existing wall is <u>not</u> stable and requires ADDITIONAL reinforcing".

b)    In the Special Notations section: "These tie anchor rods are rusting through and are no longer reliable ... Calculations for overturning for a gravity wall without the additional surcharge of the block extended wall above and the surcharge from the vehicle parking and angle of incline would fail the safety test. A simple fix of the upper wall would not be enough."

Plaintiff must also plead and prove malice. Malice is defined as commencing a proceeding based upon a wrong or improper motive, that is, something other than a desire to see the ends of justice served. <u>Nordelli v. Stamberg</u>, 44 NY2d 500, 406 NYS2d 443 (1978); <u>Shapiro v. Nassau</u>, 202 AD2d 358, 609 NYS2d 234 (1st Dept, 1994). As demonstrated above, all of the available evidence supports the fact that all the Greenwalds wanted was for a structural engineer to provide an assessment of the wall. There is, of course, nothing wrong or improper about this, and as a matter of law the actions of the Greenwalds do not qualify as malice.

The affidavits of the Greenwalds establish that they never requested, importuned or suggested that any kind of violation notice or summons be issued against the Rotenbergs and that their letter of April 14, 2006 was sent to express their concern about the structural integrity of the wall. Furthermore, the affidavit of Ronald Carpaneto confirms that the Greenwalds played no role in his decision to issue either violation notice or the summons.

Accordingly, plaintiffs cannot maintain a claim for malicious prosecution because: a) the summons issued against plaintiffs was for violation of a town ordinance not a criminal statute, and hence no criminal proceeding was brought against plaintiffs, b) the Greenwalds did not initiate the proceeding, c) the proceeding was not

brought with malice and d) there is ample probable cause to believe that the structural integrity of the wall was unsound.   The allegations contained in paragraph 119 that the Greenwalds gave advice, had evidence created, and encouraged and importuned the Town of Mamaroneck and Mr. Carpaneto to act are nothing more than conclusory statements without anything to support them.

The statute of limitations for malicious prosecution is one year.  CPLR §215(3). Since the complaint fails to allege any acts attributable to the Greenwalds after June 14, 2006, the filing of plaintiffs's complaint with the court on May 20, 2008, was beyond the one year statute of limitations and provides a separate basis for dismissal of this cause of action.


**Interference With Prospective Advantage:**

The tort of interference with prospective advantage comes about when a person or entity intentionally, knowingly and by wrongful means prevents another person or entity from entering into a business relationship that would have been entered into but for the interference.  Implicit in this tort, therefore, is that there are two parties who are intending to enter into a business relationship and that the actions of the defendants prevent that business relationship from being formed.   The elements of this cause of action are, therefore, as follows: 1) the defendant knew of a proposed contract between plaintiff and another individual, 2) defendant intentionally interfered with that proposed contract, 3) were it not for the defendant's interference, the proposed contract would have been entered into, 4) defendant's interference was done by wrongful means and 5) plaintiff suffered damages as a result.

An interference claim requires that the defendant have knowledge of a proposed contract.  Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp. 50 NY2d 183, 428 NYS2d 628 (1980).  For a complaint to state a cause of action the complaint must specify the defendant's knowledge.  Burns Jackson Miller Summit & Spitzer v. Lindner,

- 16 -

88 AD2d 50, 452 NYS2d 80 (2ⁿᵈ Dept, 1982) affirmed 59 NY2d 314, 464 NYS2d 712 (1983) and plaintiff must allege that the defendant acted intentionally to interfere with the plaintiff's prospective contractual relation. Herilhy v. Metropolitan Museum of Art, 214 AD2d 250, 633 NYS2d 106 (1ˢᵗ Dept, 1995); WFB Telecommunications, Inc. v. NYNEX Corp., 188 AD2d 257, 590 NYS2d 460 (1ˢᵗ Dept, 1992). Plaintiff must also establish, and hence plead, that but for the interference, a contract would have been entered into, not just that it was reasonably certain that it would have been entered into. A.S. Randall, Inc. v. Hyster Co., 3 NY2d 369, 165 NYS2d 4751 (1957); Pacheco v. United Medical Associates, P.C., 305 AD2d 711, 759 NYS2d 556 (3ʳᵈ Dept, 2003); Fine v. Dudley D. Doernberg & Co., Inc., 203 AD2d 419, 610 NYS2d 566 (2ⁿᵈ Dept, 1994).

In order to state a cause of action plaintiff must plead and prove wrongful means. Carvel Corp. v. Noonan, 3 NY3d 182, 785 NYS2d 359 (2004); NBT Bancorp Inc. v. Fleet/Norstar Financial Group, 87 NY2d 614, 641 NYS2d 581 (1996). The type of culpable conduct required is conduct that amounts to a crime or an independent tort or where a defendant engages in the conduct for the sole purpose of inflicting intentional harm on plaintiffs. Carvel Corp. v. Noonan, supra; Basicorp Ltd. v. Kahn, 270 AD2d 147, 736 NYS2d 708 (3ʳᵈ Dept, 2002). Furthermore, the complained of conduct must be directed at the party with which, or with whom, the plaintiff has or seeks to have a relationship. Carvel Corp. v. Noonan, supra.

In paragraphs 137-143 of their complaint, plaintiffs make conclusory allegations that the Greenwalds interfered with the plaintiffs's contract with Coldwell Banker. This, of course, is inadequate to plead the tort of interference with prospective advantage, because that tort requires conduct which prevents a business relationship from being entered into, and according to plaintiffs' complaint the Rotenbergs entered into a contract with Coldwell Banker. Obviously there was no impact upon the Rotenbergs's relationship with Coldwell Banker, for no such allegation appears in the complaint. Furthermore, this tort requires that the defendant engage in conduct for the sole purpose of preventing plaintiff and a third party from entering into a business relationship. Under no stretch of the imagination can anyone imagine that this occurred in the instant case.

- 17 -

Plaintiffs are unable to maintain a cause of action for interference with prospective advantage for the following reasons: a) there is no allegation that the Greenwalds were aware of a prospective contract. (In fact, the Greenwalds' affidavits establish that they were not aware of any prospective contract), b) there is no allegation that any action undertaken by the Greenwalds caused a prospective buyer to decline to purchase plaintiffs's home, c) there is no allegation that any action undertaken by the Greenwalds was directed to any person who was seeking to enter into a contact to purchase plaintiffs's home and d) the conduct about which plaintiffs complain, which amounts to sending the letter of April 14, 2006, communicating with Mr. Carpaneto and allegedly arranging to have Mr. Salanitro's letter sent to the Town of Mamaroneck, does not constitute a crime, is not an independent tort and was not undertaken for the sole purpose of inflicting intentional harm.

**Prima Facie Tort:**

The elements of a cause of action for prima facie tort are: 1) the intentional infliction of harm, 2) that results in special damages, 3) without any excuse or justification, 4) by an act or series of acts that would otherwise be lawful. <u>Freihofer v. Hearst Corp.</u>, 65 NY2d 135, 490 NYS2d 735 (1985); <u>Curiano v. Suozzi</u>, 63 NY2d 113, 480 NYS2d 466 (1984 ).

The intent required is the intent to harm. <u>Curiano v. Suozzi</u>, <u>supra</u>; <u>Varella v. Investors Inc. Holding Corp.</u>, 185 AD2d 309, 586 NYS2d 272 (2nd Dept, 1992) affirmed 81 NY2d 958, 598 NYS2d 761 (1993). It is clearly the New York rule that there is no liability for prima facie tort unless malevolence is the defendant's sole motive. <u>Burns Jackson Miller Summit & Spitzer v. Lindner</u>, 59 NY2d 314, 464 NYS2d 712 (1983); <u>WFB Telecommunications, Inc. v. NYNEX Corp.</u>, <u>supra</u>; <u>Bassim v. Hassett</u>, 184 AD2d 908, 585 NYS2d 566 (3rd Dept, 2003). The burden is upon plaintiff to show that defendant's sole motive was one of disinterested malevolence and so failure to allege that the sole motivation for the conduct charged was malevolent requires dismissal of a cause

of action alleging prima facie tort. <u>Lynch v. McQueen</u>, 309 AD2d 790, 765 NYS2d 645
(2nd Dept, 2003). See also <u>Landnor-St. Gelais v. Albany International Corp.</u>, 307 AD2d
671, 763 NYS2d (3rd Dept, 2003) and <u>Smith v. Livingston</u>, 69 AD2d 993, 416 NYS2d
130 (4th Dept, 1979).

Plaintiff must also prove that the defendant's act was without justification. What
constitutes justification that the law will recognize is a question of law for the court.
<u>Brandt v. Winchell</u>, 3 NY2d 628, 170 NYS2d 828 (1958). Whether defendant acted in
whole or in part with justification or solely for the purpose of injuring plaintiff is also a
question of law for the court when the facts are undisputed. <u>Reinforce Inc. v. Birney</u>, 308
NY164 (1954), <u>Hessel v. Goldman, Sachs & Co.</u>, 281 AD2d 247, 722 NYS2d 21 (1st
Dept, 2001). The court determines what constitutes justification by weighing the
conflicting interests of the parties and the public and makes its determination on
principles of policy. <u>ATI, Inc. v. Ruder & Finn, Inc.</u>, 42 NYS2d 454, 398 NYS2d 864
(1977).

Where the defendant's actions are supported by a proper motive there can be no
recovery under a theory of prima facie tort. <u>Amodei v. New York State Chiropractic
Ass'n.</u>, 160 AD2d 279, 553 NYS2d 713 (1st Dept, 1990) affirmed 77 NY2d 891, 568
NYS2d 900 (1991), and so the failure of a complaint to assert the intentional infliction of
economic damage without justification renders a cause of action sounding in prima facie
tort dismissible. An altruistic motive also provides protection, so that if one of
defendant's purposes is to perform an act or establish a business that will be of benefit to
others and give them a service not previously enjoyed, there is no liability. <u>Reardsley v.
Kilmer</u>, 236 NY 80 (1923). The destruction of an injury causing object in order to
prevent further damage is a proper purpose that will preclude any recovery in prima facie
tort. <u>Coley v. Arnot Ogden Memorial Hospital</u>, 107 AD2d 67, 485 NYS2d 867 (3rd Dept,
1985).

Special damage is an essential element, and for a cause of action in prima facie
tort to be sufficiently pleaded the complaint must set forth a particularized statement of

the reasonable, identifiable and measurable special damages – broad and conclusory terms are insufficient to fulfill this critical element.    Varella v. Investors Insurance Holding Corp., supra.    So stringent is the requirement of alleging special damages that a complaint that fails to allege special damage with sufficient particularity will be dismissed.    Freihofer v. Hearst Corp., supra; Morrison v. National Broadcasting Co., 19 NY2d 735, 280 NYS2d 641 (1967).    Damages set forth in round figures without particularization is deemed an allegation of general rather than special damages.    Leather Dev. Corp. v. Dun & Bradstreet Inc., 15 AD2d 761, 224 NYS2d 513 (1st Dept, 1962) affirmed 12 NY2d 909, 237 NYS2d 1007 (1963).

The affidavits of Mr. and Mrs. Greenwald and Mr. Carpaneto, coupled with the plain language of the April 14th letter, establish that the Greenwalds's actions arose out of a genuine concern for the structural integrity of the wall and were not motivated by any intent to inflict economic damage upon the plaintiffs. The only communication which the Greenwalds initiated was the letter of April 14, 2006 which, as already established, was written at the suggestion of Mr. Carpaneto. Furthermore, a plain reading of the April 14th letter establishes that the motivating factor for the letter was for an evaluation of the structural integrity of the wall by a structural engineer to determine its condition and to thereby avoid the possibility of property damage or human injury should a portion of the wall collapse. This, as a matter of law, constitutes an altruistic motive and provides justification for the issuance of the letter.

Plaintiffs are unable to maintain a cause of action for prima facie tort for the following reasons: a) the complaint does not allege that the sole motive of the Greenwalds' actions was to cause harm to plaintiffs, b) the contents of the April 14, 2006 letter are such that as a matter of law the Greenwalds had a justifiable concern about the structural integrity of the wall and the damage to their home were the wall to collapse, c)the actions of the Greenwalds are supported by a proper motive, namely, to prod the plaintiffs into having an engineer evaluate the structural integrity of the wall,  d) the complaint fails to allege that the actions attributable to the Greenwalds constitutes an intentional infliction of economic damage without justification.

- 20 -

The statute of limitations for prima facie tort is one year. CPLR §215(3). Since the complaint fails to allege any acts attributable to the Greenwalds after June 14, 2006, the filing of plaintiff's complaint with the court on May 20, 2008 was beyond the one year statute of limitations and provides a separate basis for dismissal of this cause of action.

**Injurious Falsehood:**

The tort of injurious falsehood, which was referred to by the common law as "slander of title" or "trade libel", was originally concerned only with ownership or quality of property, <u>Lampert v. Edelman</u>, 24 AD2d 562, 261 NYS2d 450 (1st Dept, 1965), but has been extended to include non-property injuries resulting from intentional falsehood. The elements of slander of title are: 1) a communication falsely casting doubt on the validity of complainant's title, 2) reasonably calculated to cause harm and 3) resulting in special damages. <u>Fink v. Shawangunk Conservancy Inc.</u>, 15 AD3d 754, 790 NYS2d 249 (3rd Dept, 2005); <u>Brown v. Bethlehem Terrace Associates</u>, 136 AD2d 222, 525 NYS2d 978 (3rd Dept, 1988). When the tort involves defamation of a product or a service, sometimes called "injurious falsehood", its elements are typically described as falsity, malice and special damage. <u>Collision Plan Unlimited, Inc. v. Bankers Trust Co.</u>, 63 NY2d 827, 482 NYS2d 252 (1984); <u>Drug Research Corp. v. Curtis Publishing Co.</u>, 7 NY2d 435, 199 NYS2d 33 (1960). Essentially, injurious falsehood is a form of interference with economic relations, <u>Cunningham v. Hagedorn</u>, 72 AD2d 702, 422 NYS2d 70 (1st Dept, 1979), and envisions interference with any type of legally protected property interest that is capable of being sold. <u>Lambert v. Edelman, supra</u>. As such it can include an easement, a mortgage, personal property, a publication, the title to a motion picture, the goodwill of a restaurant or hotel or the right to sell a product free of defendant's claim of patent infringement, and may also touch such non-property interests as the right not to be subjected to deportation proceedings, the right to remain free from unwarranted income tax prosecution and the right not to be made to appear to be a cheater. The interference may take the form of a written or oral statement, or a picture, which need not be defamatory. Whatever form that the communication takes it is essential that it could be reasonably understood to be injurious, that it was intended to be

so understood, and that it was so understood, thereby causing injury to plaintiff. Whether it could be so understood is a question for the court, and whether it was reasonably so understood is a question for the jury. [(PJI3d 3.56 at 494 (2007)].

Since falsity is one of the essential elements, the burden is upon the plaintiff to plead and prove that the statement is false. Jurlique, Inc. v. Austral Biolab Pty Ltd., 187 Ad2d 637, 590 NYS2d 235 (2nd Dept, 1992). A privilege exists when the allegedly offending statement is fairly made by a person in discharge of a private or public duty, legal or moral, or in the conduct of his own affairs in a matter where his interests are concerned. John W. Lovell Co. v. Houghton, 116 NY520. A qualified or conditional privilege for fair comment is also recognized. Mack, Miller Candle Co. v. MacMillan, 239 App. Div. 738, 269 NYS 33, affirmed 266 NY 489 (1934). Clearly, the Greenwalds enjoy a privilege to make comments about the condition of a wall that holds back many tons of earth.

Where the allegedly false statements were made by the defendants to public officials, the defendants will be immune from liability for making those statements, even if they were false, pursuant to the Noem-Pennington Doctrine, which protects the First Amendment rights to petition the government unless the defendants have no genuine interest in seeking governmental action. Villanova Estates, Inc. v. The Fieldston Property Owners Association, Inc., 23 AD2d 160, 803 NYS2d 521 (1st Dept, 2005).

Plaintiffs attempt to plead the tort of injurious falsehood in paragraphs 125-131 of the complaint by alleging that the Greenwalds initiated communications intended to cast doubt on the quality of plaintiffs' property. However, the only actual statement attributable to the Greenwalds is the letter of April 14, 2006, which does not contain any false statements of fact. Instead, it contains a recapitulation of an exchange between the Rotenbergs and the Greenwalds and documents the Greenwalds's request that the Rotenbergs call an engineer to evaluate the wall's continuing structural integrity – a request that came about because of the Rotenbergs's stated desire to retain a mason to perform repair work which could have camouflaged the true condition of the wall.

Indeed, the letter does not say that the wall is structurally unsound, rather it simply requests that the services of a structural engineer be retained to evaluate the wall, and that once such an evaluation is completed it might very well indicate that the wall is structurally sound and safe and simply needs patching. This, as a matter of law, does not qualify as a false statement of fact. Simply put, the April 14, 2006 letter does not contain any false statements, but rather is an expression of concern regarding the structural integrity of the wall which contains a request that the plaintiffs retain a structural engineer to evaluate the wall. A vague reference to "communications" or 'statements" without specifically setting forth what it was that constituted a false statement or false communication is inadequate to sustain a complaint. Since falsity is one of the essential elements, the burden is upon plaintiff to plead and prove that the statement is false. Jurlique, Inc. v. Austral Bio Lab Pty Ltd., 187 AD2d 637, 590 NYS2d 235 (2nd Dept, 1992). This obviously requires that the complaint affirmatively state what it is that is false. Plaintiffs's complaint in this instance fails to do so.

Plaintiff's complaint fails to set forth a cause of action for injurious falsehood for the following reasons:

a)    The April 14, 2006 letter does not contain any false statements, but rather is an expression of concern regarding the structural integrity of the wall which contains a request that plaintiffs retain a structural engineer to evaluate the wall.

b)    The letter of April 14, 2006, does not call into question plaintiffs's ownership of the wall (defendants acknowledge that plaintiffs own it) and does not interfere with plaintiffs's ownership of the wall. The wall, not being a "legally protected property interest" such as an easement, a mortgage and so forth, does not fall within the realm of what is contemplated by the tort of injurious falsehood.

c)    The April 14, 2006 letter, by its very language, seeks only to encourage the Rotenbergs to retain an engineer to inspect the wall so as to reassure the Greenwalds that the wall is sturdy and not likely to fall.

d)    The Greenwalds were entitled via privilege to express their concerns about the wall for in doing so they were discharging their duty to protect themselves, their family and guests from injury should the wall collapse.

e)    The statements, having been made to government officials, are protected as First Amendment petitioning of the government.

The statute of limitations for an "action to recover damages for ... false words causing special damages" is one year.  CPLR 215(3).  Since the complaint fails to allege any acts attributable to the Greenwalds after June 14, 2006, the filing of plaintiffs's complaint with the court on May 20, 2008 was beyond the one year statute of limitations and provides a separate basis for dismissal of this cause of action.

**Negligence:**

Negligence is the lack of ordinary care.  It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances that proximately causes an accident that in turn causes injury to another.  New York PJI 2:10.  No accident is alleged to have occurred, nor does the complaint make any allegations concerning the failure to use reasonable care.  As such, a cause of action for negligence cannot be maintained.

**CONCLUSION**

Based upon the foregoing, it is respectfully requested that the court grant the instant motion in its entirety and dismiss plaintiffs's complaint in its entirety insofar as it attempts to assert causes of action against defendants, JAYNE GREENWALD and BLAINE GREENWALD.

VOUTÉ, LOHRFINK, MAGRO & COLLINS, LLP
Attorneys for Defendants GREENWALD

By: _____
     RALPH F. SCHOENE          4547

170 Hamilton Avenue
White Plains, New York 10601-1789
Tel.: (914) 946-1400
Fax:  (914) 946-8024

Dated: White Plains, New York
       June 30, 2008