1      and I assume when you look at your wall from your

2      property, you mean the right side?

3              A       No, the part that comes from 5

4      Huguenot runs down the left part when you look and

5      even now it's still not perfect. It's like a river

6      when it really pours, it's like a river but the

7      other people's property is on the right side.

8              Q       So, my question is, could it be the

9      time period, the same time period as when you

10     complained formally and in writing to the building

11     inspector with regard to work that was being

12     performed by the owners of 3 Huguenot Drive?

13             A       Yes, it could have been, yes.

14             Q       How many times did you have

15     meetings with Mr. Carpaneto with regard to this

16     particular wall?

17             A       I don't know if I ever met him but

18     I met him around the time of the issue with when

19     the 3 Huguenot Road, which was-- you know, that

20     was a very  complicated circumstance because they

21     were in the process of people building --

22                     MRS. MULLINS: Your Honor, I move to

23             strike, I asked him with reference to this

24             wall.

25                     THE COURT: The last part of your

1          answer is stricken. Repeat the question.

2                    Q          How many meetings did you have with

3    Mr. Carpaneto concerning this wall?

4                    A          I don't believe I had any meetings

5    with him, my wife may have met him but it was not

6    more than once but I did not have meetings, we had

7    phone conversations but not meetings.

8                    Q          How many phone conversations did

9    you have with him?

10                   A          Two or three, something like that.

11                   Q          Your, yourself?

12                   A          Yes, those phone conversations were

13   was--

14                   THE COURT: No, stop. Mrs. Mullins,

15         you have to object.

16                   MRS. MULLINS: I am trying to. He

17         talks very quickly. Could we have the last

18         question read back.

19                   (Whereupon, the last question was

20         read back by the reporter.)

21                   Q          Those phone conversations that you

22   testified to were between yourself and Mr.

23   Carpaneto; is that correct?

24                   A          Yes.

25                   Q          Did your wife also have phone

1    conversations with Mr. Carpaneto?

2          A       She may have.

3          Q       Do you know how many?

4          A       No, but it would not be more than a

5    couple in my opinion.

6          Q       Do you know if your wife had any

7    meetings with Mr. Carpaneto?

8          A       I don't think so but when we wanted

9    to get the copy of something, she may have come and

10   tried to get a copy.

11         Q       How long have you lived at 2

12   Lafayette?

13         A       I guess we moved in December of

14   1988, so eighteen years.

15         Q       Have you ever, in the eighteen

16   years that you lived there, with the exception of

17   this present case, ever complained about this wall

18   to anyone?

19         A       Not formally.

20         Q       How about informally?

21         A       If you look at it, it's one of

22   those things --

23                 MRS. MULLINS: Move to strike.

24                 THE COURT: Stricken.

25         A       Only to family and friends.

1        Q       Did you ever make any disclosure

2   formal or informal to the Mr. Rotenbergs?

3        A       Not to my knowledge.

4        Q       To the building department?

5        A       Not to my knowledge.

6        Q       How were you made aware that Mr.

7   Rotenberg was selling the house?

8        A       My wife said that Mr. Rotenberg

9   said it and that is in our letter to him on April

10   14th.

11        Q       When were you made aware of that?

12        A       Before we wrote that letter on

13   April 14tth.

14        Q       Do you recall how you were made

15   aware?

16                MRS. FIORE: It's been asked and

17          answered.

18                THE COURT: Do you recall how, yes or

19          no.

20        A       No.

21        Q       Isn't it true that you learned that

22   the house was being listed for sale and you took

23   the opportunity to have an attempt to have

24   substantial work done on your side at this time?

25                MRS. FIORE: Objection.

2    answer that.

3            A       It's not our wall, it's his wall,

4    there is no dispute about that to my knowledge,

5    so --

6            MRS. MULLINS: Move to strike.

7            THE COURT: Stop.

8            A       Sorry.

9            Q       The question is, isn't it true that

10   you became aware that the house was being offered

11   for sale and you took this opportunity --

12           A       No, that is not true the trigger

13   was Mr. Rotenberg asking to have a mason

14   cosmetically repair the wall. We did not know he

15   was selling the house.

16           Q       But you testified that you became

17   aware that he was going to sell the house?

18           A       Yes, after that.

19           Q       And after that is when you wrote

20   your letter and contacted the building department

21   and had all of these conversations; isn't that

22   true?

23           A       Yes, but we did not want the damage

24   to the wall--

25           Q       Yes or no?

1           A       We did not want the damage to the

2    wall being covered by stucko covering it. It did

3    not seem fair to us or to the new buyers, it's a

4    potentially dangerous situation.

5           Q       You used the word cosmetic several

6    times, did Mr. Rotenberg ever use the word cosmetic

7    when he described to you what was going to be done

8    to your side of the wall?

9           A       Not to my knowledge.

10          Q       You did not have any conversations

11   with the contractor; did you?

12          A       A contractor of Mr. Rotenberg?

13          Q       Yes.

14          A       No.

15          Q       Did your wife have any conversation

16   with the contractor?

17          A       I don't know the answer to that but

18   Mr. Rotenberg --

19               THE COURT: Stop.

20               MRS. MULLINS: Nothing further, Your

21          Honor.

22               MRS. FIORE: Nothing further.

23               MR. GREENWALD: Am I permitted say

24          something?

25               THE COURT: You are here to testify,

1  that heard you are here to answer the

2  questions. I heard the question and I heard

3  your testimony, so, I thank you for your

4  testimony and you are excused. If you wish,

5  you may remain in the courtroom and hear

6  the rest of the trial. You don't have to

7  but the court is open. You could stay if

8  you wish.

9            THE COURT: Do the People have any

10  other testimony or evidence they would like

11  to present.

12            MRS. FIORE: No, Your Honor at this

13  time the People rest.

14            THE COURT: Okay.

15            THE COURT: Mrs. Mullins?

16            MRS. MULLINS: At this time I would

17  like to make a motion and renew my prior

18  motion but on somewhat different grounds.

19            At this point, the Defendant's move

20  to dismiss the summons issued in this case

21  based on the fact that the People have

22  failed to prove beyond a reasonable doubt

23  that the Defendant has violated the section

24  302.7 of the New York State Building Code.

25            Further and in particular Your

the factual section of the accusatory

instrument.

That was not done certainly when it was served and now the People have put forth three witnesses and that still has not been established.

Your Honor, based on that, the Defendants move to dismiss the action with prejudice.

THE COURT: Okay, I'm going to reserve my decision on your motion for a direct verdict, which is what it is and ask you to please proceed with your case.

MRS. MULLINS: Could I have a short break?

MRS. FIORE: Before we take that break, could I be heard as to my application?

THE COURT: I don't know what you could have.

MRS. FIORE: My application is also for a direct verdict in favor of the People Your Honor.

THE COURT: You can't to that.

MRS. FIORE: There is a prima facie

1    case --

2              THE COURT: Whether or not you made a

3    prima facie case, the Defendant still has a

4    right to put on their own evidence, so this

5    is not a recognized motion.

6              MRS. FIORE: Yes, Your Honor.

7              THE COURT: Okay, let's have a five

8    minute break.

9              MRS. MULLINS: I would like to speak

10   to my witnesses.

11             (Whereupon, a short recess was taken

12   by all parties.)

13             THE COURT: Mrs. Mullins, call  your

14   first witness.

15             MRS. MULLINS: We call John

16   Annunziata, professional engineer.

17             THE COURT: Remain standing and I

18   will swear you in.

19   J O H N   A N N U N Z I A T A , a witness herein,

20   having been first duly sworn by the Court, was

21   examined and testified as follows:

22   DIRECT EXAMINATION BY: MRS. MULLINS:

23        Q    Good morning Mr. Annunziata, could

24   you tell the Court your formal education in the

25   field of engineering?