1    retaining walls.

2            Q       Mr. Coppola, have you testified in
3    court before as an expert?
4            A       Yes.
5            Q       Within the State of New York?
6            A       Yes, and one in Connecticut.
7            Q       Could you just tell the Court,
8    approximately, how many times you testified as an
9    expert?
10           A       Five or six times.
11           Q       On what subject did you testify?
12           A       A couple of cases where there was a
13   water intrusion from a neighbor onto the other
14   neighbor. One was a retaining wall and the other
15   was-- I think were foundation walls within the
16   building, cracked foundation walls.
17           Q       During those occasions where you
18   testified in court, were you qualified as an
19   engineer expert?
20           A       Yes.
21                   MRS. MULLINS: I ask that the Court
22                   qualify Mr. Coppola as an expert in the
23                   field of engineering at this time.
24                   THE COURT: Do you wish to make any
25                   inquiry?

1  
2  Honor.

3  THE COURT: I find that Mr. Coppola
4  is qualified as an expert witness in the
5  area of engineering, listen to the next
6  question.
7  Q      Did there come a time that you were
8  requested to view a wall that is the subject of
9  this case?
10 A      Yes.
11 Q      Did you inspect the wall?
12 A      Yes, I did this November 15th, this
13 year.
14 Q      Were you with anyone when you made
15 that inspection?
16 A      Mr. Annunziata who hired our firm
17 to do it.
18 Q      What did you observe?
19 A      Well, I observed a concrete block
20 wall resting on a stone wall from the Huguenot
21 Street property. Then we walked around to the back
22 and drove around and then I saw the stone wall
23 approximately ten to twelve feet high topped by a
24 concrete block wall approximately four feet high
25 and I found that the concrete block wall in the

1   and supervision of retaining walls, where these

2   type of tie backs are used, is there always some

3   mechanism that this rod ties into?

4       A   You mean always?

5       Q   Yes.

6       A   I don't suspect that that wall was
7   put in with tie backs originally, I think when they
8   noticed the movement a while after they constructed
9   it, they noticed some movement and I think they
10  installed the tie backs then but I can't tell how
11  long they have been there.

12      Q   Could you explain to the Court if
13  it was done subsequent the original construction,
14  how would that have taken place? How would the
15  construction of those tie backs have taken place?

16      A   How would they do it after the
17  construction of the wall?

18      Q   Yes.

19      A   They would have excavated into the
20  driveway. The driveway that they had in the back,
21  excavate a spot where the poured concrete block is
22  going to be and anchor the tie back rod back into
23  those blocks.

24          Then, the front of the wall has a
25  plate, which is holding back, which is surfaced on

```
 1    the front face of the wall. The rods go through the
 2    wall, through the soil and onto a concrete block.
 3              That is correctly done, I did not
 4    see them, the rods are there.
 5         Q    In your in professional opinion, is
 6    the bottom portion of the wall that is made of
 7    stone stable?
 8         A    Yes, it appears to be stable.
 9         Q    With regard to the upper portion --
10         A    The upper portion is stabilized
11    because there are tie backs holding it back. It had
12    moved in the center, I think I stated that before
13    but just the center was not aligned with the front
14    part of the stone wall and the two ends were still
15    lined up, just the middle had moved out.
16         Q    Could you estimate the length of
17    that middle area that moved out?
18         A    I should have measured it, I would
19    say approximately eight feet but at the widest part
20    it was three to four inches. It tapers out.
21         Q    When you went out to the site to
22    inspect and evaluate the wall below, did you also
23    have an occasion to look at the wall and inspect it
24    from the upper portion?
25         A    Yes.
```

2  were taken by the home owner with regard to any
3  repairs to that top area?
4      A    Well, I was only there with Mr.
5  Annunziata and he showed me that the driveway had
6  been repaved a while ago. That day it was
7  completely full of leaves because it was after a
8  big rainstorm that we had.
9           So, the driveway had be repaired
10 and the front part of the wall was stucko. It did
11 not appear to be a resent stucko job but the
12 driveway had been repaired or so I was told.
13     Q    So it was a new driveway?
14     A    Relatively new driveway, then as
15 you face the house from the back of 5 Huguenot, it
16 was sloped that way.
17     Q    To your left?
18     A    To your left as you face the back
19 of the house.
20     Q    So, if you are standing with the
21 wall behind you?
22     A    It was sloped in that direction,
23 any water run off went this way.
24     Q    Did you notice whether or not the
25 wheel stops were installed in the driveway?

1  A   Yes, there were three or four wheel
2  stops there.
3  Q   What is the purpose of wheel stops?
4  A   I'm sorry.
5  Q   What is the purpose of those wheel
6  stops?
7  A   To stop a car short of bumping into
8  the overhang of the wall with the bumper.
9  MRS. MULLINS: I have nothing
10 further, Your Honor.
11 THE COURT: Okay.
12 THE COURT: Mrs. Fiore?
13 MRS. FIORE: Yes.
14 CROSS EXAMINATION BY MRS. FIORE:
15 Q   Did you take any notes?
16 A   Yes, I wrote a report and I took
17 pictures.
18 MRS. FIORE: I will object to the
19 witness entire testimony and that his
20 testimony be stricken. I was not given any
21 notice of a report or any provision that
22 Mr. Coppola-- of his findings and I would
23 object to his entire testimony.
24 MRS. MULLINS: Your Honor, I did not
25 even see the report myself and I certainly

offering it, I am just merely offering the testimony of Mr. Coppola's himself today and based on that there is no reason to strike any part of the his testimony.

MRS. FIORE: I would just add Your Honor that the People were denied the opportunity to provide their extra witness.

I'm working within the frame work of a bureaucracy and the fact that the Defendants had the opportunity to, get at the last hour, another witness without notice to the People.

THE COURT: The People had the opportunity from July. The Defendant only had an opportunity from October 17th.

MRS. FIORE: The People had an expert available for the preparation of the case as it went before Your Honor two or three weeks ago.

Just because a notice of violation or a summons has been issued, is there a presumption that the case will go to trial the fact that case has gone to trial, has only been known--

1   THE COURT: I already explained my
2   perspective on that --
3       MRS. FIORE: And I understand, yet
4   I'm being prejudiced here --
5       THE COURT: You are not being
6   prejudiced --
7       MRS. FIORE: For the record, I'm
8   being prejudiced because not only did I not
9   have the opportunity to call my witness --
10      THE COURT: Do you have another
11  witness that you would like to call, if you
12  have other witness available that you would
13  like to call, certainly you may call
14  another witness.
15      MRS. FIORE: I'll see if the witness
16  is available to come to court and testify.
17  I could certainly make that inquiry.
18      THE COURT: You went ahead --
19      MRS. FIORE: I was trying to provide
20  the Defendants with the proper notice, with
21  the report, with the findings of an expert,
22  the courtesy of which I was not given and I
23  object strenuously to this witnesses's
24  testimony.
25      THE COURT: So there are two issues.

1       One, objection to the testimony of this
2   witness. That objection is unfounded
3   because the Defendant, in a criminal
4   proceeding, could put on more than one
5   witness if they want.
6       MRS. FIORE: Yes.
7       THE COURT: They choose to avail
8   themselves of evidence and testimony and I
9   gave them that opportunity to avail
10  themselves with the rights and privileges
11  in the United States Constitution the right
12  of criminal defendant in their trial.
13      Second, you have been in front of me
14  enough to know that when I say we are going
15  to have a trial, we are going to have a
16  trial.
17      MRS. FIORE: I'm not disputing that
18  issue, Your Honor. What I'm disputing is
19  that from the vantage point of the town,
20  it's not within the purview of the town
21  prosecutor to go and engage and retain
22  experts. If it were within my purview, I
23  certainly would have done that. It's not
24  within my jurisdiction to go out on behalf
25  of the town and start retaining structural

1        engineers, that is not my job.

2             THE COURT: But you know what, you
3        are missing the point of your roll as
4        representative --
5             MRS. FIORE: I'm not missing it.
6             THE COURT: It is late and now is not
7        the time for me to provide a seminar on
8        that topic.
9             MRS. FIORE: I'm not interested in
10       having a seminar nor do I need one. I have
11       been engaged with the town powers that be
12       and the responsible people who are
13       responsible for obtaining the expert
14       witness for this trial.
15            This witness has offered nothing
16       beyond the prior witnesses's testimony.
17       That was the grounds for my first
18       objection.
19            The second objection is, if you are
20       going to allow his testimony, the People
21       should be given the opportunity to provide
22       their witness who could rebut this
23       witness's testimony.
24            THE COURT: Okay, call the person
25       right now. You are excused. Do you have