1   Q   As a result of the conversation
2   with Mr. Greenwald and the inability of the Calvi
3   Firm to do the work on that side of the wall, did
4   they perform other work at your property?
5   　　　A   I had them on site, so I said, Fred
6   fix what you may. So, he looked at the left side of
7   wall, poured concrete and there was a crack along
8   the fence post, so I asked my neighbor and he gave
9   me permission and they put up the scaffolding
10  there, fixed that crack everything they could on
11  our side.
12  　　　Q   Did they, at that time, apply the
13  stucko coat to your side of the wall that is
14  visible?
15  　　　A   Yes.
16  　　　Q   Did they to anything else at that
17  time?
18  　　　A   Well they fixed the crack and I
19  observed all this. They drilled it out, they put
20  water proofing seal in it. This filed it down, they
21  sanded it, they filled it with concrete, a special
22  boding of water proof concrete and then they
23  applied the stucko and checked the wall for
24  structural integrity again. I was with Mr. Fred
25  Calvi when he did that.

1  Q    What did you pay the Calvi Firm for
2  the work that you just described, that is, the work
3  to the number 3 Huguenot drive side of the wall and
4  your side of the wall?
5       A    That total came to approximately,
6  probably thirty-two hundred dollars, thirty-three
7  hundred dollars, though we did hot pay them at that
8  time because there might be more work to be done,
9  so we held that payment in obeyance.
10      Q    Did there come a time thereafter
11 that you had other work done at the house?
12      A    Yes.
13      Q    With regard to just the driveway,
14 what other work did you have done?
15      A    We had to remove an oil tank in the
16 driveway.
17          THE COURT: Now, I know Mrs. Fiore
18      is not objecting but we are getting too far
19      afield here.
20          MRS. FIORE: I will withdraw that
21      question.
22      Q    Did you have the driveway repaved
23 and resealed?
24      A    Yes, we did.
25      Q    Did you do that after you had the

1  oil tank removed?
2      A    Yes, we had to because the drive
3  was completely destroyed.
4      Q    With regard to the resealing and
5  resurfacing of the driveway, what, if anything, did
6  the contractors do where that driveway meets the
7  wall?
8      A    They put in a berm, which is about
9  a six inch swell in the blacktop in order to divert
10 the water such as it was coming down the driveway
11 to eliminate pressure on the wall and it channels
12 off to the right because there is no wall into the
13 backyard away from any interference with the wall.
14     Q    During the period from March or
15 April through the summer months, you were having
16 other work done at the house; is that right?
17     A    Yes.
18     Q    During that period of time, did
19 building officials from the Town of Mamaroneck ever
20 visit your premises?
21     A    Yes, they did.
22     Q    Who was that?
23     A    Kevin Moore.
24     Q    To your understanding, what
25 position does he hold with the building department?

1   A   He is Ron Carpaneto's assistant.
2   Q   What were the reasons for his
3   visits?
4   A   Initially on or about April 25th,
5   when the oil tank was being removed, we had to have
6   a building inspector examine it to make sure there
7   was no oil leek. So, Mr. Moore came by to examine
8   and check for all fundamental purposes.
9       He pronounced it all fine and he
10  pointed to the wall --
11  Q   Did you have some discussions with
12  him at that time?
13  A   We had a brief discussion at that
14  point about the wall and said this is the wall that
15  we heard about.
16  Q   At that point, had you been served
17  a notice of violation if you recall?
18  A   No.
19      MRS. FIORE: Excuse me, I don't see
20      the relevance of anything that has
21      occurred --
22      THE COURT: You have to say
23      objection.
24      MRS. FIORE: Objection, I don't see
25      any of the relevance to any of this given

1  the fact that this is all repairs done
2  prior to the notice of violation.
3           THE COURT: We have gotten far afield
4  but you did not object, so then I had to
5  let it keep going. We are far afield.
6           MRS. MULLINS: I wanted him to
7  testify as to the fact that the building
8  official was at the premises on several
9  occasions.
10          THE COURT: Fine.
11     Q    In particular, with regard to the
12 wall, what if any statements were made?
13     A    Approximately, a month later Kevin
14 came back to the house to check other matters and
15 he then pointed to the wall and brought it up again
16 and said, this is the wall that everyone is talking
17 about in the Town of Mamaroneck. I described what
18 had been going on and Mr. Moore said well,
19 sometimes --
20          MRS. FIORE: Objection, this is all
21 hearsay, I have to object.
22          THE COURT: Sustained.
23     Q    As a result of your conversation
24 with Mr. Moore, was your understanding or opinion
25 changed in any way with regard to the wall?

1  A    Yes, it was.

2              MRS. FIORE: Objection.

3              THE COURT: Overruled.

4       Q    How was it changed?

5       A    It was changed for the positive.

6       Q    I may have asked you this and if I
7  did I'm sure the prosecutor will remind me, but in
8  the eighteen years that you resided in the
9  premises, I know you clearly testified that you had
10 no communication from the Greenwalds but have you
11 had any conversation with respect to this wall from
12 anyone else whether it be an official from the Town
13 of Mamaroneck or another neighbor?

14      A    We have never heard one word about
15 this wall in the eighteen years we lived there.

16      Q    As a result of your discussions
17 with the contractor, the mason contractor who
18 inspected the wall and made proposals to you, with
19 regard to repair work, did you have all repair work
20 done to the wall that you were able to do?

21      A    Yes.

22      Q    There came a time, of course, that
23 you served with certain notices of violation in
24 this case, I think two of them and a summons in
25 this case, from the time of that service of that

1   first notice of violation throughout the entire
2   life span of this proceeding, were you ever
3   informed by any official from the Town of
4   Mamaroneck Building Department with regard to what
5   needed to be done in their estimation to this wall?
6         A     No, not one word.
7         Q     Mr. Rotenberg, you still own the
8   house?
9         A     Yes.
10        Q     And it's still listed for sale?
11              MRS. FIORE: Objection.
12              THE COURT: Sustained.
13              MRS. Mullins: Is that because it
14   was leading, Your Honor?
15              THE COURT: It's irrelevant.
16              MRS. MULLINS: Your Honor, what I
17   think is very relevant and what I would
18   like to ask Mr. Rotenberg, with the Court's
19   permission, is about the circumstances,
20   very briefly two questions, with regard to
21   the fact that there are two outstanding
22   contracts of sale for the premises that
23   have not been executed because of this very
24   issue.
25              THE COURT: I understand what you are

1   saying and I accept what you are saying but
2   the issue in this case is, is the wall safe
3   or not safe. That is the only issue we are
4   here today to try.
5        Q    The wheel stops that were testified
6   to, were they installed?
7        A    Yes, three of them were installed
8   approximately five feet from the wall.
9             MRS. MULLINS: I have nothing
10  further.
11            THE COURT: Mrs. Fiore, would you
12  like to ask Mr. Rotenberg any questions?
13            MRS. FIORE: Yes.
14  CROSS EXAMINATION BY MRS. FIORE:
15       Q    Prior to moving from your residence
16  at 5 Huguenot, did you park your vehicle there?
17       A    Yes?
18       Q    Approximately, how many vehicles
19  would be parked there on an average?
20       A    Two.
21       Q    Was that your practice to park your
22  car there during the eighteen years that you lived
23  there?
24       A    No.
25       Q    Approximately, how long have you

1  been parking your car there?
2      A   Since 2002, 2001.
3      Q   The repairs that you spoke of
4  earlier from the Calvi Firm --
5      A   Yes.
6      Q   They were performed, approximately,
7  April of 2006, was that your --
8      A   Approximately, April 10th of 2006.
9  That was when the wall was repaired.
10     Q   Were there any subsequent repairs
11 after April 2006?
12     A   There was the new driveway.
13     Q   To the wall, I'm sorry?
14     A   This abuts the wall, so it's part
15 of the system.
16     Q   Okay.
17     A   So, there was a driveway, which was
18 put in June and the parking stops were put in
19 September.
20     Q   Other than those three things that
21 you just mentioned, no other repairs to the wall
22 subsequent to the notice of violations?
23     A   Nothing else that we were capable
24 of doing.
25     Q   So, the condition of the wall, as

1    testified to by the building inspector earlier, is

```
 1                    THE COURT: Okay.
 2                    MRS. MULLINS: I have nothing
 3    further.
 4                    THE COURT: Okay, would you like to
 5    excuse Mr. Rotenberg?
 6                    MRS. MULLINS: Yes. Your Honor, we
 7    have nothing further in way of witnesses.
 8                    THE COURT: Okay, do you rest your
 9    case?
10                    MRS. MULLINS: We do.
11                    THE COURT: Okay, do the People have
12    a rebuttal case that they would like to
13    present?
14                    MRS. FIORE: I was told the building
15    department was trying to locate the second
16    engineer, Your Honor.
17                    THE COURT: By second engineer you
18    mean Mr. Geossl?
19                    MRS. FIORE: No, Mr. Davis.
20                    THE COURT: Okay, and could you tell
21    me who Mr. Davis is.
22                    MRS. FIORE: He is with the firm of
23    Briggs and Davis(ph) engineering firm.
24                    THE COURT: All right, let me just
25    backtrack, I was not clear enough. I don't
```