**LIST OF EXHIBITS**

A          Federal Complaint

B          State Complaint

C          Decision of Hon. Richard Liebowitz dated January 16, 2008

D          Photographs

E          Greenwald letter dated April 14, 2006

F          Benedict Salanitro report dated June 14, 2006

G          Anthony Oliveri report dated October 26, 2006

H          Grigg & Davis report dated November 26, 2006

I           Vincent Masucci report dated June 11, 2007

J           Ronald A. Carpento affidavit dated September 13, 2007

K          Summons and Information

L          Transcript of trial held in Town of Mamaroneck Court

EXHIBIT "A"

JUDGE ROBINSON

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

GARY R. ROTENBERG and JANE J. DICKSON

V.

THE TOWN OF MAMARONECK, RONALD A
CARPANETO (Indiviudally), JAYNE
GREENWALD, and BLAINE GREENWALD

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:  '08 CIV 4703

**TO:** (Name and address of Defendant)

SEE ATTACHED RIDER

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MICHAEL J. ANDREWS, P.C.
The Lincoln Building
60 East 42nd Street, 47th Floor
New York, NY 10165

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

CLERK

MAY 2 0 2008

(By) DEPUTY CLERK

DATE

JUN 1 2 2008

AO 440  (Rev. 8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:


☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:


☐  Other (specify):


## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                              Date                              *Signature of Server*


                                          _____
                                                        *Address of Server*


(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# RIDER TO SUMMONS

To:

TOWN OF MAMARONECK
740 West Boston Post Road
Mamaroneck, NY 10543

RONALD CARPANETO
c/o Town of Mamaroneck
740 West Boston Post Road
Mamaroneck, NY 10543

JAYNE GREENWALD
2 Lafayette Drive
Larchmont, NY 10538

BLAINE GREENWALD
2 Lafayette Drive
Larchmont, NY 10538

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'08 CIV 4703**

**JUDGE ROBINSON**

-------------------------------------------------------------------X

GARY R. ROTENBERG and JANE J. DICKSON

Plaintiff,                          **COMPLAINT**

- against -

THE TOWN OF MAMARONECK,
RONALD A. CARPANETO, (individually);
JAYNE GREENWALD, and
BLAINE GREENWALD,



Plaintiffs Demand Trial
By Jury

MAY 20 2008

U.S.D.C. S.D. N.Y.
CASHIERS

Defendants.

-------------------------------------------------------------------X

The plaintiffs, complaining of the defendants by their attorneys, MICHAEL J. ANDREWS,

P.C., hereby allege upon information and belief as follows:

## PREAMBLE

1.      As alleged with more particularity below, the defendants are alleged to have maliciously

prosecuted the plaintiffs and committed other tortious conduct against the plaintiffs.

2.      Jurisdiction of this Court is invoked under the provisions of Sections 1331, 1332,

1343(3), and 1367(a) of Title 28, United States Code and pursuant to Sections 1983 and 1988 of Title

42, United States Code.

3.      The amount in controversy exceeds $75,000.00.

4.      Venue is placed in the Southern District of New York because it is a district in which

a substantial part of the events giving rise to the claims occurred.

## THE PARTIES

5.      The plaintiff GARY R. ROTENBERG ("ROTENBERG") is an adult citizen of the

State of New Jersey.

6. The plaintiff JANE J. DICKSON ("DICKSON") is an adult citizen of the State of New Jersey.

7. At all relevant times, Gary R. Rotenberg and Jane J. Dickson have been lawfully married to one another.

8. The defendant TOWN OF MAMARONECK ("MAMARONECK") is a municipal corporation duly organized under the laws of the State of New York.

9. At all relevant times, defendant TOWN OF MAMARONECK was acting under color of law, to wit: the laws of the State of New York and the Town of Mamaroneck.

10. The defendant RONALD A. CARPANETO ("CARPANETO") is an adult citizen of the State of New York.

11. At all relevant times, defendant CARPANETO was and is an employee of the defendant MAMARONECK.

12. At all relevant times, defendant CARPANETO was employed by the defendant MAMARONECK as its Director of Buildings.

13. At all relevant times, defendant CARPANETO was acting within the scope of his employment and in the furtherance of his duties with defendant MAMARONECK. Defendant CARPANETO is sued in his individual capacity.

14. At all relevant times, defendant CARPANETO was acting under color of law, to wit: the laws of the State of New York and the Town of Mamaroneck.

15. The defendant JAYNE GREENWALD is an adult person who is a citizen of the State of New York.

16. The defendant BLAINE GREENWALD is an adult person who is a citizen of the State of New York.

2

## TIMELY COMMENCEMENT OF ACTION

17.     On July 6, 2007, the plaintiffs commenced an action against the defendants herein in the Supreme Court, State of New York, County of Westchester under index number 12167 / 2007 ("the State Court Action").

18.     The State Court Action was timely commenced.

19.     On or about January 17, 2008 the State Court Action was dismissed without prejudice.

20.     The dismissal of the State Court Action was not due to a voluntary discontinuance, by a failure to obtain personal jurisdiction over any defendant, a neglect to prosecute, or by a final judgment on the merits.

21.     This action is based upon the same transaction or occurrence or series of transactions or occurrences as set forth in the State Court Action.

22.     This action is commenced within 6 months of the January 17, 2008 dismissal of the State Court Action.

23.     Pursuant to New York's Civil Practice Law and Rules §205(a), this action is commenced timely.

## BACKGROUND FACTS

24.     Approximately 20 years ago, during approximately April or May 1988, the plaintiffs, as husband and wife, signed a contract to purchase a residential home located at 5 Huguenot Drive, Larchmont, New York. During approximately August 1988, the plaintiffs moved into the residence at 5 Huguenot Drive ("5 Huguenot Drive").

25.     The plaintiffs used the home at 5 Huguenot Drive as their residence until approximately July 7, 2006.

3

26. On or about December 7, 2006, the plaintiffs entered into a contract to sell their residential property located at 5 Huguenot Drive. On or about December 18, 2006, the plaintiffs home was sold.

27. Also approximately 20 years ago, during approximately December 1988, the defendants Jayne and Blaine Greenwald purchased a residential home located at 2 Lafayette Road, Larchmont, New York ("2 Lafayette Road").

28. The aforesaid residential property located at 5 Huguenot Drive abuts the aforesaid residential property located at 2 Lafayette Road.

29. The two residential properties referred to herein as 5 Huguenot Drive and 2 Lafayette Road were constructed at or near the same time and as part of a subdivision.

30. A retaining wall ("the retaining wall"), approximately fifteen feet in height, is situated at the rear of the residential property located at 5 Huguenot Drive. The retaining wall faces into the residential property located at 2 Lafayette Road.

31. The retaining wall has a lower portion constructed of stone and an upper portion constructed of cinder blocks.

32. The retaining wall benefits both 5 Huguenot Drive and 2 Lafayette Road.

33. At the time the plaintiffs purchased their home at 5 Huguenot Drive, the retaining wall already contained materials known as, or referred to as, tie back plates and tie back rods.

34. At no time prior to April 14, 2006 had anyone, including but not limited to defendants Jayne Greenwald, Blaine Greenwald, the Town of Mamaroneck, and/or defendant Ronald Carpaneto made any complaints to either Gary R. Rotenberg or Jane J. Dickson concerning the structural integrity of the retaining wall.

35.    The defendant Town of Mamaroneck maintains a file concerning each parcel of property within the Town of Mamaroneck. More particularly, the defendant Town of Mamaroneck maintained a file concerning the plaintiffs' residential property located at 5 Huguenot Drive. The file maintained by the defendant Town of Mamaroneck is available for public inspection and contains records such as deeds, subdivision maps, violations, and correspondence.

36.    On or about March 22, 2006, the plaintiffs entered into a contract with Jackie Carroll of Coldwell Banker for Coldwell Banker to act as the plaintiffs' real estate broker and to sell the plaintiffs' home at 5 Huguenot Drive, Larchmont, New York.

37.    On or about March 22, 2006, the plaintiffs listed their home for sale and their home was formally and publically listed for sale. Based upon the advice and recommendations of their real estate broker, based upon the current real estate market, and based upon the then fair market value of their home, the plaintiffs listed their home for sale for the price of $1,995,000.00.

38.    By letter dated April 14, 2006, defendants Jayne Greenwald and Blaine Greenwald wrote to the plaintiffs to claim their purported concern with "the structural integrity of your retaining wall that separates our properties ..." and that "Should the wall collapse, damage would occur to both of our properties and houses not to mention the possibility of human injury." The defendants Greenwald further threatened to "hold [the plaintiffs] responsible for any such damage to our property, home, or person resulting from the breakdown or collapse of your retaining wall."

39.    The defendants Greenwald knew that they had no reason to believe that the retaining wall was in danger of collapse or was of an impaired structural integrity, or would cause damage to their properties, homes, or humans.

40.    The defendants Greenwald further falsely stated that the plaintiffs were intending to "put a cosmetic band-aid on a potentially greater problem." The defendants further falsely stated that

5

the plaintiffs did not want the retaining wall "professionally assessed." In fact, the defendants Greenwald knew that the plaintiffs had never used the word "cosmetic" and the defendants Greenwald knew that the plaintiffs had requested access to the Greenwald's property so that the plaintiffs' professional mason could evaluate and assess the retaining wall.

41.    Defendants Jane Greenwald and Blaine Greenwald purposefully excluded from their April 14, 2006 letter the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years.

42.    The defendants Blaine Greenwald and Jayne Greenwald each knew or were aware that the omission from the April 14, 2006 letter of the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years was one cause of that letter being materially misleading.

43.    By their letter dated April 14, 2006, the defendants Greenwald admitted their knowledge that the plaintiffs' home was then for sale and on the market.

44.    According to defendants Jayne Greenwald and Blaine Greenwald, between April 6, 2006 (the date the Greenwalds contend Gary Rotenberg spoke to them) and April 14, 2006 (the date of their letter), they spoke with defendant Ronald Carpaneto regarding the retaining wall.

45.    Defendant Blaine Greenwald has claimed that approximately one year prior to April 2006, he spoke with defendant Ronald Carpaneto about the residential property located at 3 Huguenot Drive - one of the plaintiffs' neighbors.

46.    Although defendant Blaine Greenwald has claimed that he spoke with defendant Ronald Carpaneto approximately one year prior to April 2006, defendant Blaine Greenwald did not claim that he raised any concern, of any kind, with Ronald Carpaneto during that alleged meeting about the retaining wall.

6

47.     On or about Thursday, May 12, 2005, a retaining wall collapsed on the Henry Hudson Highway in Manhattan. The defendants Greenwald were aware of that event at or about the time of the collapse.

48.     Between May 12, 2005 and April 14, 2006, the defendants Greenwald raised no concern with the structural integrity of the retaining wall with either the plaintiffs or defendant Carpaneto or the defendant Town of Mamaroneck.

49.     The defendants Jayne Greenwald and Blaine Greenwald sent a copy of the aforesaid letter dated April 14, 2006 to defendant Ronald A. Carpaneto, the Town of Mamaroneck, Director of Building Code Enforcement. By sending the copy of the aforesaid letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to cause the letter to be publically filed with the Town of Mamaroneck's records concerning the plaintiffs' property located at 5 Huguenot Drive.

50.     By sending a copy of the April 14, 2006 letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Ronald Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended  to impair the plaintiffs' ability to sell their home and/or to decrease the value (or selling price) of the plaintiffs' home.

51.     Defendant Jane Greenwald and Blaine Greenwald expected and anticipated that prospective purchases of the plaintiffs' home (or persons acting on behalf of prospective purchasers) would review the files maintained by the Town of Mamaroneck concerning the plaintiffs' property and that such persons would see a copy of the April 14, 2006 letter sent by the defendants Greenwald to the defendants Town of Mamaroneck and Ronald Carpaneto.

52.     By sending a copy of the April 14, 2006 letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine

7

Greenwald intended to impose economic duress upon the plaintiffs (by impairing the plaintiffs' ability to sell their home) so that the defendants Greenwald could thereby coerce the plaintiffs into constructing a more esthetically pleasing retaining wall facing into the Greenwalds' property.

53.     On April 17, 2006, three days after the Greenwalds sent their April 14, 2006 letter to the plaintiffs and to the defendant Town of Mamaroneck, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home to $1,895,000.00; on or about May 9, 2006, the asking price was further decreased to $1,795,000.00.

54.     On or about April 24, 2006, Kevin Moore, a building inspector employed by the defendant Town of Mamaroneck in its Building Department, was present at the plaintiffs' residential home at 5 Huguenot Drive.  On that date, Mr. Moore observed the retaining wall and Mr. Moore stated to Gary R. Rotenberg that the retaining wall did not appear to have any structural defects or deficiency.

55.     After sending their April 14, 2006 letter to the defendants Town of Mamaroneck and Ronald Carpaneto the defendants Blaine and Jayne Greenwald claim that they felt that "nothing really had happened" so they placed telephone calls to the defendants Town of Mamaroneck and Ronald Carpaneto.

56.     After telephoning the defendants Town of Mamaroneck and Ronald Carpaneto, the defendants Blaine and Jayne Greenwald claim they continued to feel that "nothing really happened" so they retained an engineer to perform an analysis and to create evidence to provide to the defendant Town of Mamaroneck and to defendant Ronald Carpaneto.

57.     Defendant Blaine Greenwald has claimed that the defendant Town of Mamaroneck advised his wife and him to retain a licensed professional engineer and that the Town of Mamaroneck

specifically referred them to Benedict Salanitro, P.E.  The defendants Greenwald understood and believed that Benedict Salanitro was the building inspector for the Town of Scarsdale.

58.     The defendants Greenwald expected and anticipated that by retaining Benedict Salanitro, the person allegedly referred to them by the Town of Mamaroneck, they would derive a benefit and that the plaintiffs would suffer a detriment as a result.

59.     By letter dated June 14, 2006, the defendants Greenwald caused a further letter / report to be sent to defendant Ronald Carpaneto, the Town of Mamaroneck Director of Buildings.  By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to cause the letter / report to be publically filed with the Town of Mamaroneck's records concerning the plaintiffs' property located at 5 Huguenot Drive.

60.     Defendants Jane Greenwald and Blaine Greenwald once again purposefully caused the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years to be excluded from the June 14, 2006 letter / report.

61.     The June 14, 2006 letter falsely stated that the plaintiffs were intending to make "cosmetic repairs to the wall...."

62.     The defendants Blaine Greenwald and Jayne Greenwald each knew or were aware that the omission from the June 14, 2006 letter of the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years was one cause of that letter being materially misleading.

63.     By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck's chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald

9

intended to impair the plaintiffs' ability to sell their home and/or to decrease the value (or selling price) of the plaintiffs' home.

64.     Defendant Jane Greenwald and Blaine Greenwald expected and anticipated that prospective purchases of the plaintiffs' home (or persons acting on behalf of prospective purchasers) would review the files maintained by the Town of Mamaroneck concerning the plaintiffs' property and that such persons would see a copy of the June 14, 2006 letter / report sent on behalf of the defendants Greenwald to the defendants Town of Mamaroneck and Ronald Carpaneto.

65.     By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck's chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to impose further economic duress upon the plaintiffs so that the defendants Greenwald could coerce the plaintiffs into constructing a more esthetically pleasing wall facing into the Greenwald's property.

66.     On or about June 14, 2006, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home from $1,795,000.00 to $1,695,000.00.

67.     On or about June 23, 2006, the defendant Town of Mamaroneck issued a "Notice of Violation and Order to Remedy the Same" to the plaintiffs. The "Notice of Violation" was signed by defendant Ronald A. Carpaneto.

68.     The June 23, 2006 Notice of Violation referenced section 302.7 of the New York State Property Maintenance Code, however, the Notice of Violation failed to state or identify, in any manner, the underlying alleged factual basis allegedly supporting the Notice of Violation. The June 23, 2006 Notice of Violation did not identify any particular "accessory structure(s)" allegedly violating the code.

69.     Moreover, the June 23, 2006 Notice of Violation also failed to state, in any manner, the nature of the "remedy" sought by the defendant Town of Mamaroneck.  Similarly, the June 23, 2006 Notice of Violation failed to inform the plaintiffs the actions, if any, they should (or could) take to remedy the alleged, but unspecified, violation.

70.     The June 23, 2006 Notice of Violation threatened the plaintiffs with possible fines and imprisonment if they did not "remedy" the unspecified condition by Monday, July 3, 2006 - i.e. within five business days from the issuance of the Notice of Violation

71.     Prior to issuing the June 23, 2006 Notice of Violation, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Notice of Violation; he lacked a good faith basis to issue the Notice of Violation, and he lacked probable cause to issue the Notice of Violation.

72.     The June 23, 2006 Notice of Violation was not issued based upon any reasoned judgment or discretion of either defendant Ronald Carpaneto or defendant Town of Mamaroneck.

73.     Defendant Ronald Carpaneto is not an architect.

74.     Defendant Ronald Carpaneto is not an engineer.

75.     Defendant Ronald Carpaneto is not a structural engineer.

76.     Defendant Carpaneto lacked the requisite skill, training, and expertise to render an opinion as to the structural integrity of the retaining wall.

77.     The June 23, 2006 Notice of Violation was issued as a ministerial act by the defendants Ronald Carpaneto and the Town of Mamaroneck.

78.     On June 23, 2006, defendants Town of Mamaroneck and Ronald Carpaneto each were aware that the plaintiffs' home was for sale.

11

79.    On or about June 23, 2006, the defendants Blaine Greenwald and Jayne Greenwald became aware of the existence of the notice of violation issued on June 23, 2006.

80.    On June 23, 2006, defendants Town of Mamaroneck, Ronald Carpaneto, Blaine Greenwald, and Jayne Greenwald each knew that the issuance of a Notice of Violation against the plaintiffs' property would have a significant detrimental impact on the plaintiffs' ability to sell their home and on the value of the plaintiffs' home.

81.    The defendants Blaine Greenwald, Jayne Greenwald, Ronald Carpaneto, and the Town of Mamaroneck were each aware that a typical provision in contracts to buy and sell residential property within the Town of Mamaroneck requires the seller of the residential property to convey the property free of any governmental notices of violations.

82.    The defendants Blaine Greenwald, Jayne Greenwald, Ronald Carpaneto, and the Town of Mamaroneck were each aware that a seller of residential property would be obligated to disclosure to potential purchasers of the residential property of the existence of any outstanding notices of violation.

83.    The defendants Blaine Greenwald, Jayne Greenwald, Ronald Carpaneto, and the Town of Mamaroneck were each aware that the plaintiffs, as a seller of residential property, would be obligated to disclosure to potential purchasers of the plaintiffs' home at 5 Huguenot Drive of the existence of any outstanding notices of violation.

84.    The defendants Blaine Greenwald, Jayne Greenwald, Ronald Carpaneto, and the Town of Mamaroneck sought to, intended to, and did use the threat of penal code sanctions including imprisonment and fines to obtain or to seek to obtain leverage in, at most, a possible civil dispute.

85.    After receiving the Notice of Violation and Order to Remedy the Same dated Friday, June 23, 2006, the plaintiffs promptly contacted an attorney, Dolores Battalia, Esq., to assist them

12

with this matter and to discuss this matter, on their behalf, with the Town of Mamaroneck and its officials.

86.     One reason the plaintiffs promptly contacted an attorney was because the Notice of Violation did not inform the plaintiffs as to (i) what "accessory structure" was alleged to violate the code, (ii) the manner in which the unspecified "accessory structure" was alleged to violate the code, nor (iii) were they advised as to the "remedy" being sought by the Town.

87.     Additionally, the plaintiffs, as attorneys admitted to the practice of law in the State of New York, were highly concerned with the threat that they could be fined and imprisoned if they did not "remedy" the unspecified condition by Monday, July 3, 2006 - i.e. within five business days from the issuance of the Notice of Violation and just at the beginning of the Fourth of July holiday.

88.     The plaintiffs were also concerned about the potential implications that the Notice may have had on their ability to sell their home. Upon information and belief, Attorney Battalia discussed this matter, on the plaintiffs' behalf, with the Town and its various officials during a period of approximately the end of June 2006 through perhaps mid-September 2006.

89.     During mid-September 2006, because Attorney Battalia had not been able to resolve the issue with the Town, the plaintiffs retained the legal services of Mary Beth Mullins, Esq.

90.     On or about September 14, 2006, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home from $1,695,000.00 to $1,550,000.00.

91.     By letter dated September 18, 2006 and addressed to defendant Ronald Carpaneto, Ms. Mullins, in her capacity as counsel for the plaintiffs, set forth her legal analysis of the issue and she asked Mr. Carpaneto to contact her if he had any questions regarding the matter.

92.     On or about September 29, 2006, the defendant Town of Mamaroneck issued a "Notice of Violation and Order to Remedy the Same" to the plaintiffs. The September 29, 2006 "Notice of Violation" was also signed by defendant Ronald A. Carpaneto.

93.     The September 29, 2006 Notice of Violation again referenced section 302.7 of the New York State Property Maintenance Code, however, the Notice of Violation again failed to state or identify, in any manner, the underlying alleged factual basis allegedly supporting the Notice of Violation. The September 29, 2006 Notice of Violation again did not identify any particular "accessory structure(s)" allegedly violating the code.

94.     Like the June 23, 2006 Notice of Violation, the September 29, 2006 Notice of Violation also failed to state, in any manner, the nature of the "remedy" sought by the defendant Town of Mamaroneck. Similarly, the September 29, 2006 Notice of Violation again failed to inform the plaintiffs the actions, if any, they should (or could) take to correct the alleged violation.

95.     Prior to issuing the September 29, 2006 Notice of Violation, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Notice of Violation; he lacked a good faith basis to issue the Notice of Violation, and, he lacked probable cause to issue the Notice of Violation.

96.     The September 29, 2006 Notice of Violation once again threatened the plaintiffs with being fined and imprisoned if they did not "immediately" "remedy" the unspecified condition.

97.     The September 29, 2006 Notice of Violation was not issued based upon any reasoned judgment or discretion of either defendant Ronald Carpaneto or defendant Town of Mamaroneck.

98.     The September 29, 2006 Notice of Violation was issued as a ministerial act by the defendants Ronald Carpaneto and the Town of Mamaroneck.

99.     On October 17, 2006, a criminal prosecution of the plaintiffs was commenced.

14

100. On October 17, 2006, the defendant Town of Mamaroneck issued a Summons (summons number 666-06) with a criminal information to the plaintiffs Gary R. Rotenberg and Jane J. Dickson. The summons and criminal information alleged that the plaintiffs, on July 3, 2006, had violated the Property Maintenance Code §302.7 of New York State.

101. According to the criminal information, the facts upon which the criminal information was based were (i) a July 3, 2006 violation issued, (ii) a September 29, 2006 final notice of violation issued, and (iii) October 17, 2006 summons issued.

102. The Summons was signed by defendant Ronald Carpaneto and directed the plaintiffs to appear in the Town Court of Mamaroneck on October 30, 2006 at 7:00 p.m. (The matter was then adjourned to Monday, November 6, 2006, and then to November 20, 2006.)

103. Prior to issuing the October 17, 2006 Summons and criminal information, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Summons or criminal information, he lacked a good faith basis to issue the Summons and criminal information, and, he lacked probable cause to issue the Summons and criminal information.

104. According to defendant Ronald Carpaneto, the two violations (i.e. the June 23, 2006 Notice of Violation and the September 29, 2006 Notice of Violation) and the summons were based upon the telephone calls of the defendants Greenwald and an engineering report sent to the defendants Town of Mamaroneck and Ronald Carpaneto on behalf of the defendants Greenwald.

105. On or about October 25, 2006, after the criminal prosecution had already been commenced, an engineer, Anthony Oliveri, retained by the defendant Town of Mamaroneck examined the retaining wall.

106. Mr. Oliveri subsequently opined that the lower stone wall appeared straight, he did not see any immediate concerns with the stone part of the wall, and the stone portion of the wall appeared to be in acceptable condition.

107. Mr. Oliveri further opined that a structural engineer, somebody specializing in retaining walls, would be better suited to give a more thorough evaluation and examination.

108. On November 20, 2006, the plaintiffs appeared and a trial was held with respect to the Summons issued to the plaintiffs.

109. Jane Evans, a prospective purchaser of the plaintiffs' property sat in the courtroom throughout the trial.

110. On November 20, 2006, the plaintiffs were acquitted and found not guilty of the criminal charge brought against them.

111. On November 22, 2006, the defendants Town of Mamaroneck and Ronald Carpaneto issued a "Notice of Violation Removal" to the plaintiffs which indicated that the violation dated September 29, 2006 which "had been issued for Accessory structures (wall) has been removed."

112. Between the date on which the plaintiffs moved into their home at 5 Huguenot Drive and until they sold their home at 5 Huguenot Drive, the retaining wall remained in substantially the same physical condition.

113. Between June 23, 2006 (the date of the first Notice of Violation) and November 22, 2006 (the date of the Notice of Violation Removal) the retaining wall remained in substantially the same physical condition.

114. On or about December 18, 2006, the plaintiffs sold their home to Douglas Mason and Jane Evans for the price of $1,400,000.00.

115.    As part of the sale, and because of the baseless allegations made by the defendants Jayne

Greenwald, Blaine Greenwald, Town of Mamaroneck, and Ronald Carpaneto, the plaintiffs were

forced to provide an additional $50,000.00 reduction in the price of their home.  Said $50,000.00

represented consideration for Douglas Mason and Jane Evans accepting the retaining wall in an "as

is" condition at closing.

## NOTICE OF CLAIM PROVISIONS

116.    On February 12, 2007 a Notice of Claim was duly served and filed with the Clerk of the

Town of Mamaroneck; this action was timely commenced, and that at least thirty days have elapsed

since the service of the Notice of Claim and an adjustment or payment thereof has been neglected or

refused.

## AS AND FOR A CAUSE OF ACTION FOR MALICIOUS PROSECUTION AGAINST DEFENDANTS JAYNE GREENWALD and BLAINE GREENWALD

117.    As more fully described above in the "Background Facts" section of this complaint, the

defendants Blaine Greenwald and Jayne Greenwald initiated the criminal prosecution of the plaintiffs.

118.    Defendants Jayne Greenwald and Blaine Greenwald provided false information to the

law enforcement authorities and/or they withheld material information and evidence from law

enforcement authorities in order to affect the decision as to whether to prosecute the plaintiffs and/or

to cause the prosecution of the plaintiffs. Such facts include, but are not limited to withholding from

the law enforcement officials the fact that the retaining wall had remained in substantially the same

physical condition for more than 17 years.

119.    As more fully described above in the "Background Facts" section of this complaint,

defendants Blaine Greenwald and Jayne Greenwald gave advice, had evidence created, and encouraged

and importuned defendants Town of Mamaroneck and Carpaneto to act, including but not limited to

paying to have an expert create evidence to be used against the plaintiffs (and by withholding from

17

their expert or by instructing their expert to withhold from his report) the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years.

120.   As more fully described above in the "Background Facts" section of this complaint, defendants Blaine Greenwald and Jayne Greenwald acted without probable cause in causing the commencement of the prosecution of the plaintiffs.

121.   As described above in the "Background Facts" section of this complaint, defendants Blaine Greenwald and Jayne Greenwald acted with malice in causing the prosecution of the plaintiffs.

122.   In addition, the defendant Blaine Greenwald and Jayne Greenwald, in concert and in conjunction, with defendants Town of Mamaroneck and Ronald Carpaneto maliciously used the threat of criminal proceedings and an actual criminal prosecution to seek to resolve, at most, a civil dispute.

123.   As described above in the "Background Facts" section of this complaint, on November 20, 2006, the prosecution of the plaintiffs ended favorably to the plaintiffs when they were acquitted of the charge brought against them.

124.   The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages and punitive damages against the defendants Jayne Greenwald and Blaine Greenwald.

18

## AS AND FOR A CAUSE OF ACTION FOR INJURIOUS FALSEHOOD AGAINST DEFENDANTS JAYNE GREENWALD and BLAINE GREENWALD.

125. As described above in the "Background Facts" section of this complaint, the defendants Blaine Greenwald and Jayne Greenwald each made, or caused to be made, communications falsely casting doubt as to the quality of the plaintiffs' property.

126. As described above in the "Background Facts" section of this complaint, the communications of defendants Blaine Greenwald and Jayne Greenwald were intended to cast doubt as to the quality of the plaintiffs' property.

127. As more described above in the "Background Facts" section of this complaint, the communications of defendants Blaine Greenwald and Jayne Greenwald were reasonably calculated to cause harm.

128. In both of their communications, the defendants Jane Greenwald and Blaine Greenwald purposefully excluded the fact that they had never complained about the structural integrity of the retaining wall at any time during the prior 17 years and they also purposefully excluded the fact that the retaining wall had remained in substantially the same physical condition for more than 17 years.

129. The defendants Greenwald had no true or genuine interest in seeking governmental action regarding the alleged structural integrity of the retaining wall.

130. The April 14, 2006 and the June 14, 2006 communications of defendants Blaine Greenwald and Jayne Greenwald caused the plaintiffs' special damages.

131. The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs'

19

home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages and punitive damages against the defendants Jayne Greenwald and Blaine Greenwald.

## AS AND FOR A CAUSE OF ACTION FOR PRIMA FACIE TORT AGAINST THE DEFENDANTS JANE GREENWALD and BLAINE GREENWALD.

132.    As described above in the "Background Facts" section of this complaint, defendants Blaine Greenwald and Jayne Greenwald intended to inflict harm upon the plaintiffs. Defendants Jane Greenwald and Blaine Greenwald acted solely with malice and disinterested malevolence.

133.    The actions of the defendants Jane Greenwald and Blaine Greenwald were undertaken through an act or a series of acts which might otherwise be lawful.

134.    The actions of defendants Blaine Greenwald and Jayne Greenwald were without any legal justification or excuse.

135.    As a result of the actions of defendants Blaine Greenwald and Jayne Greenwald the plaintiffs suffered special damages

136.    The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages and punitive damages against the defendants Jayne Greenwald and Blaine Greenwald.

20

## AS AND FOR A CAUSE OF ACTION AGAINST DEFENDANTS JANE GREENWALD AND BLAINE GREENWALD FOR INTERFERENCE WITH PROSPECTIVE ADVANTAGE

137.    The defendants Blaine Greenwald and Jayne Greenwald were aware of the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home at 5 Huguenot Road.

138.    The defendants Blaine Greenwald and Jayne Greenwald each intentionally interfered with that contract.

139.    The actions of defendants Blaine Greenwald and Jayne Greenwald described herein interfered with the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home.

140.    The actions of defendants Blaine Greenwald and Jayne Greenwald were wrongful.

141.    The defendants Blaine Greenwald and Jayne Greenwald intended to cause harm to the plaintiffs.

142.    The plaintiffs suffered damages as the result of the wrongful conduct of defendants Blaine Greenwald and Jayne Greenwald.

143.    The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees  incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments.  The plaintiffs also seek general compensatory damages and punitive damages against the defendants Jayne Greenwald and Blaine Greenwald.

21

## AS AND FOR A CAUSE OF ACTION AGAINST DEFENDANTS JANE GREENWALD AND BLAINE GREENWALD FOR NEGLIGENCE.

144.    The negligence of defendants Blaine Greenwald and Jayne Greenwald caused economic harm to the plaintiffs.

145.    The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages and punitive damages against the defendants Jayne Greenwald and Blaine Greenwald.

## AS AND FOR A CAUSE OF ACTION FOR MALICIOUS PROSECUTION AGAINST DEFENDANTS TOWN OF MAMARONECK and RONALD A. CARPANETO.

146.    As more fully described above in the "Background Facts" section of this complaint, the defendants Town of Mamaroneck and Ronald Carpaneto, on October 17, 2006, defendants Town of Mamaroneck and Ronald Carpaneto commenced a criminal proceeding against the plaintiffs.

147.    There was no probable cause to commence the criminal prosecution of the plaintiffs.

148.    The defendants Town of Mamaroneck and Ronald Carpaneto acted maliciously in commencing the prosecution of the plaintiffs.

149.    The defendants Town of Mamaroneck and Ronald Carpaneto maliciously, wilfully, and unconstitutionally used the threat of criminal proceedings and an actual criminal prosecution to seek to resolve, at most, a civil dispute.

22

150.    At the time the criminal prosecution was commenced, other than the inspection conducted by Kevin Moore on or about April 24, 2006 (which determined that the retaining wall did not appear to have any structural defects or deficiency), neither the Town of Mamaroneck nor Ronald Carpaneto had even inspected the plaintiffs' property.

151.    The prosecution of the plaintiffs ended in favor of the plaintiffs when they were acquitted of the charge on November 20, 2006.

152.    The actions of defendants Town of Mamaroneck and Carpaneto deprived the plaintiffs of property without due process.

153.    The acts of defendant Ronald Carpaneto violated the rights granted to the plaintiffs pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. As such, the plaintiffs seek relief against defendant Ronald Carpaneto pursuant to 42 U.S.C. §1983.

154.    The plaintiffs seek special damages against the defendants Town of Mamaroneck and Ronald Carpaneto in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees  incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages against the defendants Town of Mamaroneck and Ronald Carpaneto and also punitive damages against defendant Ronald Carpaneto.

## AS AND FOR A CAUSE OF ACTION FOR INJURIOUS FALSEHOOD AGAINST DEFENDANTS TOWN OF MAMARONECK and RONALD A. CARPANETO.

155.    The defendants Town of Mamaroneck and Ronald Carpaneto made, or caused to be made, communications falsely casting doubt as to the quality of the plaintiffs' property.

23

156.    Those communications include the June 23, 2006 Notice of Violation, the September 29, 2006 Notice of Violation, and the October 17, 2006 summons and criminal complaint.

157.    The communications of defendants Town of Mamaroneck and Ronald Carpaneto were intended to cast doubt as to the quality of the plaintiffs' property.

158.    The communications of defendants Town of Mamaroneck and Ronald Carpaneto were reasonably calculated to cause harm.

159.    The communications of the defendants Town of Mamaroneck and Ronald Carpaneto were not based upon reasoned judgment.

160.    The communications of defendants Town of Mamaroneck and Ronald Carpaneto caused the plaintiffs' special damages.

161.    The plaintiffs seek special damages against the defendants Town of Mamaroneck and Ronald Carpaneto in (i) the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home, (ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs, (iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs, (iv) the diminution in the fair market value of the plaintiffs' home, and (v) the cost of additional mortgage and escrow payments. The plaintiffs also seek general compensatory damages against the defendants Town of Mamaroneck and Ronald Carpaneto and also punitive damages against defendant Ronald Carpaneto.

## AS AND FOR A CAUSE OF ACTION FOR PRIMA FACIE TORT AGAINST DEFENDANTS TOWN OF MAMARONECK and RONALD A. CARPANETO.

162.    The defendants Town of Mamaroneck and Ronald Carpaneto intended to cause harm to the plaintiffs.

24

170. The defendants Blaine Greenwald, Jayne Greenwald, Town of Mamaroneck, and Ronald Carpaneto acted knowingly and intentionally, and in concert, to cause the acts and failures upon which liability is based.

**WHEREFORE**, the Plaintiffs demand judgment against the defendants

(i) in the amount of $50,000.00 as the result of the specific reduction in the contract price of the plaintiffs' home,

(ii) in excess of $8,727.00 in legal fees incurred as a result of the baseless allegations against the plaintiffs,

(iii) in excess of $2,268.00 in expert fees incurred as a result of the baseless allegations against the plaintiffs,

(iv) the amount of the diminution in the fair market value of the plaintiffs' home,

(v) the cost of additional mortgage and escrow payments;

(vi) general compensatory damages;

(vii) punitive damages against defendants Jayne Greenwald, Blaine Greenwald, and Ronald Carpaneto;

(viii) attorneys' fees,

(ix) the interest, costs and disbursements of this action; and

(x) such other relief as is fair, just, or equitable

Dated: New York, NY
    May 14, 2008

By: _____

Michael J. Andrews (MA 1441)
MICHAEL J. ANDREWS, P.C.
Attorneys for Plaintiffs
Post Office Address
60 East 42nd Street, 47th Floor
New York, N.Y. 10165
(212) 557-7767

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY R. ROTENBERG and JANE J. DICKSON,

Plaintiffs

- against -

TOWN OF MAMARONECK, RONALD A CARPANETO,
JAYNE GREENWALD, and BLAINE GREENWALD

Defendants

## MICHAEL J. ANDREWS, P.C.

Attorney(s) for    PLAINTIFFS

Office and Post Office Address, Telephone

**60 EAST 42ND STREET
47TH FLOOR
NEW YORK, NEW YORK 10165
(212) 557-7767**

**To**

**Attorney(s) for**

**Service of a copy of the within**                    **is hereby admitted.**

**Dated,**

**Attorney(s) for**                    .....................................

### Sir: Please take notice

☐ *NOTICE OF ENTRY*
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on                    20
☐ *NOTICE OF SETTLEMENT*
that an order                    of which the within is a true copy will be presented for
settlement to the HON.                    one of the judges

of the within named Court, at
on the                    day of                    20        at        M.

Dated,

COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a

To the best of the undersigned's knowledge, information and belief formed
after an inquiry reasonable under the circumstances, the within document(s)
and contentions contained herein are not frivolous as defined in 22 NYCRR
§130-1.1-a.

Yours, etc.

**MICHAEL J. ANDREWS, P.C.**

Attorney(s)  for

Office and Post Office Address

**60 EAST 42ND STREET
47TH FLOOR
NEW YORK, NEW YORK 10165**

**To**

EXHIBIT "B"

Defendant's addresses:

TOWN OF MAMARONECK
740 West Boston Post Road
Mamaroneck, NY 10543

RONALD CARPANETO
c/o Town of Mamaroneck
740 West Boston Post Road
Mamaroneck, NY 10543

JAYNE GREENWALD
2 Lafayette Drive
Larchmont, NY 10538

BLAINE GREENWALD
2 Lafayette Drive
Larchmont, NY 10538

By: _Michael J Andrews_
MICHAEL J. ANDREWS

MICHAEL J. ANDREWS, P.C.
Attorneys for Plaintiff(s)
Post Office Address
60 East 42nd Street
47th Floor
New York, N.Y. 10165
(212) 557-7767

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------X

GARY R. ROTENBERG and JANE J. DICKSON

                      Plaintiff,

- against -

THE TOWN OF MAMARONECK,
RONALD A. CARPANETO, (individually);
JAYNE GREENWALD, and
BLAINE GREENWALD,

                      Defendants.

**COMPLAINT**

**RECEIVED**

Index number: 12167/2007

JUL - 6 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

Plaintiffs Demand Trial
By Jury

-------------------------------------------------------------X

    The plaintiffs, complaining of the defendants by their attorneys, MICHAEL J. ANDREWS,

P.C., hereby allege upon information and belief as follows:

## THE PARTIES

1.     The plaintiff GARY R. ROTENBERG ("ROTENBERG") is an adult.

2.     The plaintiff JANE J. DICKSON ("DICKSON") is an adult.

3.     At all relevant times, Gary R. Rotenberg and Jane J. Dickson have been lawfully married to one another.

4.     The defendant TOWN OF MAMARONECK ("MAMARONECK") is a municipal corporation duly organized under the laws of the State of New York.

5.     At all relevant times, defendant TOWN OF MAMARONECK was acting under color of law, to wit: the laws of the State of New York and the Town of Mamaroneck.

6.     The defendant RONALD A. CARPANETO ("CARPANETO") is an adult.

7.     At all relevant times, defendant CARPANETO was and is an employee of the defendant MAMARONECK.

8.    At all relevant times, defendant CARPANETO was employed by the defendant MAMARONECK as its Director of Buildings.

9.    At all relevant times, defendant CARPANETO was acting within the scope of his employment and in the furtherance of his duties with defendant MAMARONECK. Defendant CARPANETO is sued only in his individual capacity.

10.    Upon information and belief, defendant CARPANETO had final decision making authority, on behalf of the defendant Town of Mamaroneck, for the events described in this complaint.

11.    At all relevant times, defendant CARPANETO was acting under color of law, to wit: the laws of the State of New York and the Town of Mamaroneck.

12.    The defendant JAYNE GREENWALD is an adult person.

13.    The defendant BLAINE GREENWALD is an adult person.

## BACKGROUND FACTS

14.    During approximately April or May 1988, the plaintiffs, as husband and wife, signed a contract to purchase a residential home located at 5 Huguenot Drive, Larchmont, New York. During approximately August 1988, the plaintiffs moved into the residence at 5 Huguenot Drive ("5 Huguenot Drive").

15.    The plaintiffs used the home at 5 Huguenot Drive as their residence until approximately July 7, 2006.

16.    On or about December 7, 2006, the plaintiffs entered into a contract to sell their residential property located at 5 Huguenot Drive. On or about December 18, 2006, the plaintiffs home was sold.

17.    During approximately December 1988, the defendants Jayne and Blaine Greenwald purchased a residential home located at 2 Lafayette Road, Larchmont, New York ("2 Lafayette Road").

18.    The aforesaid residential property located at 5 Huguenot Drive abuts the aforesaid residential property located at 2 Lafayette Road.

19.    The two residential properties referred to herein as 5 Huguenot Drive and 2 Lafayette Road were constructed at or near the same time and as part of a subdivision.

20.    A retaining wall ("the retaining wall"), approximately fifteen feet in height, is situated at the rear of the residential property located at 5 Huguenot Drive. The retaining wall faces into the residential property located at 2 Lafayette Road.

21.    The retaining wall has a lower portion constructed of stone and an upper portion constructed of cinder blocks.

22.    The retaining wall benefits both 5 Huguenot Drive and 2 Lafayette Road.

23.    At the time the plaintiffs purchased their home at 5 Huguenot Drive, the retaining wall already contained materials known as, or referred to as, tie back plates and tie back rods.

24.    At no time prior to April 14, 2006 had anyone, including but not limited to defendants Jayne Greenwald, Blaine Greenwald, the Town of Mamaroneck, and/or defendant Ronald Carpaneto made any complaints to either Gary R. Rotenberg or Jane J. Dickson concerning the structural integrity of the retaining wall.

25.    The defendant Town of Mamaroneck maintains a file concerning each parcel of property within the Town of Mamaroneck. More particularly, the defendant Town of Mamaroneck maintained a file concerning the plaintiffs' residential property located at 5 Huguenot Drive. The file maintained by the defendant Town of Mamaroneck is available for public inspection and contains records such as deeds, subdivision maps, violations, and correspondence.

26.    On or about March 22, 2006, the plaintiffs entered into a contract with Jackie Carroll of Coldwell Banker for Coldwell Banker to act as the plaintiffs' real estate broker and to sell the plaintiffs' home at 5 Huguenot Drive, Larchmont, New York.

27.    On or about March 22, 2006, the plaintiffs listed their home for sale and their home was formally and publically listed for sale. Based upon the advice and recommendations of their real estate broker, based upon the current real estate market, and based upon the then fair market value of their home, the plaintiffs listed their home for sale for the price of $1,995,000.00.

28.    By letter dated April 14, 2006, defendants Jayne Greenwald and Blaine Greenwald wrote to the plaintiffs to claim their purported concern with "the structural integrity of your retaining wall that separates our properties ..." The defendants Greenwald further threatened to "hold [the plaintiffs] responsible for any such damage to our property, home, or person resulting from the breakdown or collapse of your retaining wall." The defendants Greenwald had no reason to believe that the retaining wall was in danger of collapse or was of an impaired structural integrity.

29.    By their letter dated April 14, 2006, the defendants Greenwald admitted their knowledge that the plaintiffs' home was then for sale and on the market.

30.    The defendants Jayne Greenwald and Blaine Greenwald sent a copy of the aforesaid letter dated April 14, 2006 to defendant Ronald A. Carpaneto, the Town of Mamaroneck, Director of Building Code Enforcement. By sending the copy of the aforesaid letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to cause the letter to be publically filed with the Town of Mamaroneck's records concerning the plaintiffs' property located at 5 Huguenot Drive.

31.    By sending a copy of the April 14, 2006 letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Ronald Carpaneto, defendants Jayne Greenwald and Blaine

4

Greenwald intended to impair the plaintiffs' ability to sell their home and/or to decrease the value (or selling price) of the plaintiffs' home.

32.    By sending a copy of the April 14, 2006 letter to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to impose economic duress upon the plaintiffs (by impairing the plaintiffs' ability to sell their home) so that the defendants Greenwald could thereby coerce the plaintiffs into constructing a more esthetically pleasing retaining wall facing into the Greenwald's property.

33.    Defendant Jane Greenwald and Blaine Greenwald expected and anticipated that prospective purchases of the plaintiffs' home (or persons acting on behalf of prospective purchasers) would review the files maintained by the Town of Mamaroneck concerning the plaintiffs' property and that such persons would see a copy of the April 14, 2006 letter sent by the defendants Greenwald to the defendants Town of Mamaroneck and Ronald Carpaneto.

34.    On April 17, 2006, three days after the Greenwald's sent their April 14, 2006 letter to the plaintiffs and to the defendant Town of Mamaroneck, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home to $1,895,000.00; on or about May 9, 2006, the asking price was further decreased to $1,795,000.00.

35.    On or about April 24, 2006, Kevin Moore of the defendant Town of Mamaroneck Building Department, was present at the plaintiffs' residential home at 5 Huguenot Drive. On that date, Mr. Moore observed the retaining wall and Mr. Moore stated to Gary R. Rotenberg that the retaining wall did not appear to have any structural defects or deficiency.

36.    After sending their April 14, 2006 letter to the defendants Town of Mamaroneck and Ronald Carpaneto the defendants Blaine and Jayne Greenwald felt that "nothing really had happened" so they placed telephone calls to the defendants Town of Mamaroneck and Ronald Carpaneto.

37.    After telephoning the defendants Town of Mamaroneck and Ronald Carpaneto, the defendants Blaine and Jayne Greenwald continued to feel that "nothing really happened" so they retained an engineer to perform an analysis so they could provide to the defendant Town of Mamaroneck and defendant Ronald Carpaneto with a written report.

38.    By letter dated June 14, 2006, the defendants Greenwald caused a further letter / report to be sent to defendant Ronald Carpaneto, the Town of Mamaroneck Director of Buildings. By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck and its chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to cause the letter / report to be publically filed with the Town of Mamaroneck's records concerning the plaintiffs' property located at 5 Huguenot Drive.

39.    By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck's chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to impair the plaintiffs' ability to sell their home and/or to decrease the value (or selling price) of the plaintiffs' home.

40.    By sending the June 14, 2006 letter / report to the defendant Town of Mamaroneck's chief building inspector, defendant Carpaneto, defendants Jayne Greenwald and Blaine Greenwald intended to impose further economic duress upon the plaintiffs so that the defendants Greenwald could coerce the plaintiffs into constructing a more esthetically pleasing wall facing into the Greenwald's property.

41.    Defendant Jane Greenwald and Blaine Greenwald expected and anticipated that prospective purchases of the plaintiffs' home (or persons acting on behalf of prospective purchasers) would review the files maintained by the Town of Mamaroneck concerning the plaintiffs' property and

that such persons would see a copy of the June 14, 2006 letter / report sent on behalf of the defendants Greenwald to the defendants Town of Mamaroneck and Ronald Carpaneto.

42.    On or about June 14, 2006, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home from $1,795,000.00 to $1,695,000.00.

43.    On or about June 23, 2006, the defendant Town of Mamaroneck issued a "Notice of Violation and Order to Remedy the Same" to the plaintiffs. The "Notice of Violation" was signed by defendant Ronald A. Carpaneto.

44.    On June 23, 2006, defendants Town of Mamaroneck and Ronald Carpaneto each were aware that the plaintiffs' home was for sale.

45.    On June 23, 2006, defendants Town of Mamaroneck and Ronald Carpaneto each knew that the issuance of a Notice of Violation against the plaintiffs' property would have a significant detrimental impact on the plaintiffs' ability to sell their home and on the value of the plaintiffs' home.

46.    The June 23, 2006 Notice of Violation referenced section 302.7 of the New York State Property Maintenance Code, however, the Notice of Violation failed to state or identify, in any manner, the underlying alleged factual basis allegedly supporting the Notice of Violation. The June 23, 2006 Notice of Violation did not identify any particular "accessory structure(s)" allegedly violating the code.

47.    Moreover, the June 23, 2006 Notice of Violation also failed to state, in any manner, the nature of the "remedy" sought by the defendant Town of Mamaroneck. Similarly, the Notice of Violation failed to inform the plaintiffs the actions, if any, they should (or could) take to correct the alleged violation.

48.    Prior to issuing the June 23, 2006 Notice of Violation, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Notice of

Violation; he lacked a good faith basis to issue the Notice of Violation, and he lacked probable cause to issue the Notice of Violation.

49.    On or about September 14, 2006, the plaintiffs, based upon the advice of their real estate broker, decreased the asking price of their home from $1,695,000.00 to $1,550,000.00.

50.    On or about September 29, 2006, the defendant Town of Mamaroneck issued a "Notice of Violation and Order to Remedy the Same" to the plaintiffs. The September 29, 2006 "Notice of Violation" was also signed by defendant Ronald A. Carpaneto.

51.    The September 29, 2006 Notice of Violation again referenced section 302.7 of the New York State Property Maintenance Code, however, the Notice of Violation again failed to state or identify, in any manner, the underlying alleged factual basis allegedly supporting the Notice of Violation. The September 29, 2006 Notice of Violation again did not identify any particular "accessory structure(s)" allegedly violating the code.

52.    The September 29, 2006 Notice of Violation also failed to state, in any manner, the nature of the "remedy" sought by the defendant Town of Mamaroneck. Similarly, the September 29, 2006 Notice of Violation again failed to inform the plaintiffs the actions, if any, they should (or could) take to correct the alleged violation.

53.    Prior to issuing the September 29, 2006 Notice of Violation, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Notice of Violation; he lacked a good faith basis to issue the Notice of Violation, and, he lacked probable cause to issue the Notice of Violation.

54.    On October 17, 2006, the defendant Town of Mamaroneck issued a Summons (summons number 666-06) to the plaintiffs Gary R. Rotenberg and Jane J. Dickson. The Summons was signed by defendant Ronald Carpaneto and directed the plaintiffs to appear in the Town Court of

8

Mamaroneck on October 30, 2006 at 7:00 p.m. (The matter was then adjourned to Monday November 6, 2006, and then to November 20, 2006.)

55.   The proceeding commenced against the plaintiffs was a criminal proceeding.

56.   Prior to issuing the October 17, 2006 Summons, defendant Ronald Carpaneto had not conducted any inspection of the plaintiffs' premises; he had no basis in fact to issue the Summons, he lacked a good faith basis to issue the Summons; and, he lacked probable cause to issue the Summons.

57.   According to defendant Ronald Carpaneto, the two violations and the summons were based upon the telephone calls of the defendants Greenwald and an engineering report sent to the defendants Town of Mamaroneck and Ronald Carpaneto on behalf of the defendants Greenwald.

58.   On or about October 25, 2006, an engineer, Anthony Oliveri, retained by the defendant Town of Mamaroneck examined the retaining wall.

59.   Mr. Oliveri subsequently opined that the lower stone wall appeared straight, he did not see any immediate concerns with the stone part of the wall, and the stone portion of the wall appeared to be in acceptable condition.

60.   Mr. Oliveri further opined that a structural engineer, somebody specializing in retaining walls, would be better suited to give a more thorough evaluation and examination.

61.   On November 20, 2006, the plaintiffs appeared and a trial was held with respect to Summons issued to the plaintiffs.

62.   One of the prospective purchasers of the plaintiffs' property sat in the courtroom throughout the trial.

63.   On November 20, 2006, the plaintiffs received a favorable termination of the proceeding commenced against them.

64. On November 22, 2006, the defendants Town of Mamaroneck and Ronald Carpaneto issued a "Notice of Violation Removal" to the plaintiffs which indicated that the violation dated September 29, 2006 which "had been issued for Accessory structures (wall) has been removed."

65. Between the date on which the plaintiffs moved into their home at 5 Huguenot Drive and until they sold their home at 5 Huguenot Drive, the retaining wall remained in substantially the same physical condition.

66. Between June 23, 2006 and November 22, 2006, the retaining wall remained in substantially the same physical condition.

67. Upon information and belief, the retaining wall continues to remain in substantially the same physical condition as it did throughout the plaintiffs' ownership of 5 Huguenot Drive.

68. On or about September 23, 2006, the plaintiffs entered into a memorandum of understanding to sell their home to Douglas Mason and Jane Evans. The agreed upon price was $1,450,000.00.

69. On or about December 18, 2006, the plaintiffs sold their home to Douglas Mason and Jane Evans for the price of $1,400,000.00.

70. As part of the sale, and because of the baseless allegations made by the defendants Jayne Greenwald, Blaine Greenwald, Town of Mamaroneck, and Ronald Carpaneto, the plaintiffs were forced to provide an additional $50,000.00 reduction in the price of their home. Said $50,000.00 represented consideration for Douglas Mason and Jane Evans accepting the retaining wall in an "as is" condition at closing.

## NOTICE OF CLAIM PROVISIONS

71. On February 12, 2007 a Notice of Claim was duly served and filed with the Clerk of the Town of Mamaroneck; this action was commenced within one year and ninety days from the accrual

of the action; and that at least thirty days have elapsed since the service of the Notice of Claim and an adjustment or payment thereof has been neglected or refused.

## AS AND FOR CLAIMS AGAINST DEFENDANTS JAYNE GREENWALD and BLAINE GREENWALD

72.    The defendants Blaine Greenwald and Jayne Greenwald each made, or caused to be made, communications falsely casting doubt as to the quality of the plaintiffs' property.

73.    The communications of defendants Blaine Greenwald and Jayne Greenwald were intended to cast doubt as to the quality of the plaintiffs' property.

74.    The communications of defendants Blaine Greenwald and Jayne Greenwald were reasonably calculated to cause harm.

75.    The communications of defendants Blaine Greenwald and Jayne Greenwald caused the plaintiffs' special damages, including diminution in the value of the plaintiffs' home, additional mortgage and escrow payments, and attorneys' fees and expert fees.

76.    The defendants Blaine Greenwald and Jayne Greenwald were aware of the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home at 5 Huguenot Road.

77.    The defendants Blaine Greenwald and Jayne Greenwald each intentionally interfered with that contract.

78.    The actions of defendants Blaine Greenwald and Jayne Greenwald interfered with the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home.

79.    The actions of defendants Blaine Greenwald and Jayne Greenwald were wrongful.

80.    The defendants Blaine Greenwald and Jayne Greenwald intended to cause harm to the plaintiffs.

81. The plaintiffs suffered damages as the result of the wrongful conduct of defendants Blaine Greenwald and Jayne Greenwald.

82. Defendants Blaine Greenwald and Jayne Greenwald intended to inflict harm upon the plaintiffs.

83. As a result of the actions of defendants Blaine Greenwald and Jayne Greenwald the plaintiffs suffered special damages, including diminution in the value of the plaintiffs' home, additional mortgage and escrow payments, and attorneys' fees and expert fees.

84. The actions of defendants Blaine Greenwald and Jayne Greenwald were without any legal justification or excuse.

85. The actions of defendants Blaine Greenwald and Jayne Greenwald caused the commencement of the prosecution of the plaintiffs.

86. Defendants Blaine Greenwald and Jayne Greenwald gave advice, had evidence created, and encouraged and importuned defendants Town of Mamaroneck and Carpaneto to act.

87. Defendants Blaine Greenwald and Jayne Greenwald acted without probable cause in causing the commencement of the prosecution of the plaintiffs.

88. Defendants Blaine Greenwald and Jayne Greenwald acted with malice in causing the prosecution of the plaintiffs.

89. The prosecution of the plaintiffs ended favorably to the plaintiffs.

90. The plaintiffs seek special damages against the defendants Blaine Greenwald and Jayne Greenwald in the amount of $350,000.00 and general compensatory damages an amount of money exceeding the monetary jurisdiction of all lower courts which would otherwise have jurisdiction over this action.

## AS AND FOR CLAIMS AGAINST DEFENDANTS TOWN OF MAMARONECK and RONALD A. CARPANETO.

91.     The defendants Town of Mamaroneck and Ronald Carpaneto made, or caused to be made, communications falsely casting doubt as to the quality of the plaintiffs' property.

92.     The communications of defendants Town of Mamaroneck and Ronald Carpaneto were intended to cast doubt as to the quality of the plaintiffs' property.

93.     The communications of defendants Town of Mamaroneck and Ronald Carpaneto were reasonably calculated to cause harm.

94.     The communications of defendants Town of Mamaroneck and Ronald Carpaneto caused the plaintiffs' special damages, including diminution in the value of the plaintiffs' home, additional mortgage and escrow payments, and attorneys' fees and expert fees.

95.     The defendants Town of Mamaroneck and Ronald Carpaneto were aware of the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home at 5 Huguenot Road.

96.     The defendants Town of Mamaroneck and Ronald Carpaneto intentionally interfered with that contract.

97.     The actions of defendants Town of Mamaroneck and Ronald Carpaneto interfered with the plaintiffs' contract with Coldwell Banker to sell the plaintiffs' home.

98.     The actions of defendants Town of Mamaroneck and Ronald Carpaneto were wrongful.

99.     The defendants Town of Mamaroneck and Ronald Carpaneto intended to cause harm to the plaintiffs.

100.    The plaintiffs suffered damages as the result of the wrongful conduct of defendants Town of Mamaroneck and Ronald Carpaneto.

101.    Defendants Town of Mamaroneck and Ronald Carpaneto intended to inflict harm upon the plaintiffs.

13

102.    As a result of the actions of defendants Town of Mamaroneck and Ronald Carpaneto the plaintiffs suffered special damages, including diminution in the value of the plaintiffs' home, additional mortgage and escrow payments, and attorneys' fees and expert fees.

103.    The actions of defendants Town of Mamaroneck and Ronald Carpaneto were without any legal justification or excuse.

104.    On October 17, 2006, defendants Town of Mamaroneck and Ronald Carpaneto commenced a criminal proceeding against the plaintiffs.

105.    There was no probable cause to commence the criminal prosecution of the plaintiffs.

106.    The defendants Town of Mamaroneck and Ronald Carpaneto acted maliciously in commencing the prosecution of the plaintiffs.

107.    The prosecution of the plaintiffs ended in favor of the plaintiffs.

108.    The actions of defendants Town of Mamaroneck and Carpaneto deprived the plaintiffs of property without due process.

109.    The acts of defendants Town of Mamaroneck and Ronald Carpaneto violated the rights granted to the plaintiffs pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.  As such, the plaintiffs seek relief pursuant to 42 U.S.C. §1983.

110.    The plaintiffs seek special damages against the defendants the Town of Mamaroneck and Ronald Carpaneto in the amount of $350,000.00 and general compensatory damages in an amount of money exceeding the monetary jurisdiction of all lower courts which would otherwise have jurisdiction over this action.

WHEREFORE, the Plaintiffs demand judgment against the defendants (i) in special damages in the amount of $350,000.00, (ii) general compensatory damages in an amount of money exceeding the monetary jurisdiction of all lower courts which would otherwise have jurisdiction over this action,

(iii) punitive damages, (iv) attorneys' fees, together with the interest, costs and disbursements of this action.

Dated: New York, NY
　　　July 3, 2007

By: _____
　　　Michael J. Andrews

　　　MICHAEL J. ANDREWS, P.C.
　　　Attorneys for Plaintiffs
　　　Post Office Address
　　　60 East 42nd Street, 47th Floor
　　　New York, N.Y. 10165
　　　(212) 557-7767

**STATE OF NEW YORK, COUNTY OF**                                                                ss.:

*Individual Verification*  ☐ deponent is the                                   , being duly sworn, deposes and says, that:
                                                                   , in the within action; has read the foregoing

*Corporate Verification*  ☐ deponent is the                    of the                    and knows the contents thereof;
                                                       corporation in the within action; has read the foregoing
                                                       and knows the contents thereof;

*Attorney's Affirmation*  ☐ the undersigned is an attorney admitted to practice in the courts of New York; is the attorney of record for the
                          in the within action; has read the foregoing
            and knows the contents thereof; the same is true to affirmant's own knowledge, except as to those matters said to be upon
            information and belief and as to those matters, affirmant believes it to be true. This verification is made by affirmant because

            The grounds of affirmant's belief as to matters not stated upon affirmant's own knowledge are as follows:

the same is true to deponent's own knowledge, except as to those matters said to be upon information and belief and as to those
matters, deponent believes it to be true. The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge
are as follows:

Affirmed this                    day of                    , 20

                                                                   ...................................................................
                                                                   *(Print Name Beneath Signature)*

Sworn to before me this
    day of                                        , 20

                                                                   ...................................................................
                                                                   *(Print Name Beneath Signature)*

*Certification by Attorney*  ☐ the undersigned is an attorney admitted to practice in the courts of New York and certifies that the within

            has been compared by the undersigned with the original and found to be a true and complete copy.

Dated                    day of                    , 20

                                                                   ...................................................................
                                                                   *(Print Name Beneath Signature)*

**STATE OF NEW YORK, COUNTY OF**                                                                ss.:

                                                                   , being duly sworn, deposes and says, that deponent is not a party to this action, is over 18
        years of age and resides at                                        ; that on the                    day of                    , 20          ,
        deponent served the within

*Affidavit of Personal Service*  ☐ upon                                   personally, by delivering a true copy thereof to h                    . Deponent knew the
        person served to be the person mentioned and described in said papers.

*Affidavit of Service by Mail*  ☐ upon                                                        attorney for                    in this action, at
        the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post-paid, properly addressed
        wrapper, in a post-office/official depository under the exclusive care and custody of the United States Postal Service within the State of
        New York.

*Service by Electronic Means*  ☐ by transmitting the papers by electronic means to the telephone number listed below, which number was designated by the
        attorney for such purpose. I received a signal from the equipment of the attorney served indicating that the transmission was
        received. I also deposited a true copy of the papers, enclosed in a post-paid wrapper, in an official depository under the exclusive care and
        custody of the United States Postal Service, addressed to the attorney at the address set forth after the name.

*Overnight Delivery Service*  ☐ by depositing a true copy thereof, enclosed in a wrapper addressed as shown below, into the custody of
                                                       for overnight delivery, prior to the latest time designated by that service for overnight delivery.

**Index No.**                                                     Year 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

GARY R. ROTENBERG and JANE J. DICKSON,

Plaintiffs

- against -

TOWN OF MAMARONECK, RONALD A CARPANETO,
JAYNE GREENWALD, and BLAINE GREENWALD

Defendants

## MICHAEL J. ANDREWS, P.C.

Attorney(s) for    PLAINTIFF

Office and Post Office Address, Telephone

**60 EAST 42ND STREET**
**47TH FLOOR**
**NEW YORK, NEW YORK 10165**
**(212) 557-7767**

**To**

**Attorney(s) for**

**Service of a copy of the within**                    **is hereby admitted.**

**Dated,**

**Attorney(s) for**                    ....................................

**Sir: Please take notice**

☐ *NOTICE OF ENTRY*
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on             20

☐ *NOTICE OF SETTLEMENT*
that an order                                 of which the within is a true copy will be presented for
settlement to the HON.                                             one of the judges

of the within named Court, at
on the             day of                 20        at        M.

Dated,

COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a

EXHIBIT "C"

To commence the statutory time for appeals as of right (CPLR 5513 [a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

```
FILED
AND
ENTERED
ON  1 - 17  20 08
WESTCHESTER
COUNTY CLERK
```

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X
GARY R. ROTENBERG and JANE J. DICKSON,

                                        Plaintiffs,

           - against -

                                                    DECISION AND ORDER

                                                    Index No. 12167/07

THE TOWN OF MAMARONECK,
RONALD A. CARPANETO, (individually),
JAYNE GREENWALD, and BLAINE GREENWALD,

                                        Defendants.

------------------------------------------------------------------X
LIEBOWITZ, J.


         The following documents numbered 1 to 32 were read in connection with the

motion to dismiss of defendants Janye Greenwald and Blaine Greenwald, and the motion to

dismiss of defendants The Town of Mamaroneck (the "Town")and Ronald A. Carpaneto.

| | |
|---|---|
| Greenwald Defendants' Notice of Motion, Affidavits and Supporting Papers | 1-8 |
| Town and Carpaneto's Notice of Motion, Affidavits and Supporting Papers | 9-20 |
| Opposing Affidavits and Supporting Papers | 21- 29 |
| Reply Affidavits and Supporting Papers | 30-31; 32 |

         Defendants, Blaine Greenwald and Jayne Greenwald  reside at 2 Lafayette Road, Larchmont,

New York.  Their residence is located is within the Town of Mamaroneck.  A portion of the

JAN 1 8 2008

Greenwald's property abuts property that is owned by plaintiffs. There exists a retaining wall on

plaintiff's property, where the two properties join. Plaintiffs' premises are situated some 15 to 20 feet

higher than the Greenwald's property. The wall is constructed of stone at the base. The upper five (5)

feet of the wall is comprised of cement block. Over a period of time, the wall shifted so that it is

leaning out over the Greenwald's property.

A series of communications between plaintiffs and the Greenwalds concerning the wall

took place, beginning on April 6, 2006. Plaintiffs had requested permission that a mason be allowed

on the Greenwald's property to gain access to the wall to effect repairs. The Greenwalds countered by

saying that they wanted an engineer to evaluate the wall's condition before any repairs were

undertaken. This was refused by plaintiffs. The Greenwalds then sent a letter to plaintiffs on April

14, 2006, with a copy sent to Ronald A. Carpeneto, the Building Inspector for the Town. This letter

documented the Greenwald's concerns, as previously stated. The Town then advised the Greenwalds

to retain a licensed engineer and recommended Benedict A. Salanitro, P.E. The Town ultimately

prosecuted plaintiffs for a building code violation, which case was dismissed after trial.

While the foregoing was taking place, but after the letter was issued by the Greenwalds,

plaintiffs placed their home on the market. Originally priced at $1,995,000.00, the house ultimately

sold for $1,450,000.00 on December 7, 2006.

The complaint served in this action contains one hundred and ten (110) allegations

against the Greenwalds, the Town and Ronald A. Carpeneto. Motions have been made by the various

defendants seeking dismissal pursuant to CPLR §§3211(a) (7) and 3211(a) (5). The Town has also

moved to dismiss pursuant to General Municipal Law §50-e. A review of the complaint reveals a

2

detailed recitation of the facts in issue with a reference to a violation of 42 USC§1983. There is also an allegation that by reason of the factual circumstances, defendants are liable to plaintiffs for special damages in the sum of $350,000.00.

In the affirmation in support of the Greenwald's motion, the affirmant offers an interpretation as to what causes of action might be contained in the complaint. The complaint in a lawsuit is intended to provide a defendant with official notice regarding the matters for which a plaintiff intends to seek redress. In addition to a factual matrix, the complaint must contain a cognizable cause of action. In this case, the complaint is an aggregation of allegations which do not rise to the level of specificity required by law. This conclusion is underscored by defense counsel's attempt to opine as to the essence of plaintiffs' cause of action. Under these circumstances, the Court has no choice but to dismiss the complaint.

On the basis of the foregoing, it is hereby

ORDERED that the motion to dismiss of defendant Janye Greenwald and Blaine Greenwald is granted; and it is further

ORDERED that the motion to dismiss of defendant The Town of Mamaroneck and Ronald A. Carpaneto is granted; and it is further

ORDERED that the complaint herein is dismissed.

This constitutes the Decision and Order of this Court.

Dated: White Plains, New York
      January 16, 2008

                               *Richard B Liebowitz*
                               RICHARD B. LIEBOWITZ
                               SUPREME COURT JUSTICE

3

Voute, Lohrfink, Magro & Collins, LLP
Attorneys for Defendants
Jayne Greenwald and Blaine Greenwald
170 Hamilton Avenue
White Plains, New York 10601

Miranda Sokoloff Sambursky Slone Verveniotis LLP
Attorneys for Defendants
The Town of Mamaroneck and
Ronald A. Carpaneto
240 Mineola Blvd.
Mineola, New York 11501

Michael J. Andrews, P.C.
Attorneys for Plaintiffs
60 East 42nd Street, Suite 4700
New York , New York 10165

4

EXHIBIT "E"

Jayne and Blaine Greenwald
2 Lafayette Road
Larchmont, NY 10538

Mr. and Mrs. Gary Rotenberg
Five Huguenot Drive
Larchmont, New York  10538                    April 14, 2006

Dear Mr. and Mrs. Rotenberg:

This is to formally notify you of our concern re: the structural integrity of your retaining wall
that separates our properties and to request that you employ the services of a structural engineer
to evaluate the wall.

The wall has separations, with the top portion overhanging the bottom portion, and is very old.
You informed us that the last engineer's report was conducted nearly two decades ago. Should
the wall collapse, damage would occur to both of our properties and houses, not to mention the
possibility of human injury. This letter also formally communicates to you that we hold you
responsible for any such damage to our property, home or person resulting from the breakdown
or collapse of your retaining wall.

You recently informed us that you are in the process of selling your house and requested
permission for a mason to access the wall via our property to patch it up. When we indicated that
you should first call in an engineer to evaluate the wall's continuing structural integrity—rather
than put a cosmetic band-aid on a potentially greater problem—you said that you have no
intention of bringing in an engineer. You stated: "It is my wall and I'll do what I want to it." You
then denied your mason access to our property.

However, after prior discussion with us, we would be happy to provide access for an engineer to
evaluate the wall, and hope that in the spirit of both neighborliness, concern for your future
buyers and the safety of all involved that you will arrange this.  Such an evaluation may indicate
that the wall is, in fact, structurally sound and safe, and just needs patching up. It is puzzling to
us why you would not want to have the situation properly and professionally assessed before
performing cosmetic repairs.

Thank you for your consideration, and we look forward to amicably resolving this important
safety issue.

Sincerely,
Jayne and Blaine Greenwald
914-833-0521 (home); 914-588-2017 (cell)

cc:  Ron Carpineta, Town of Mamaroneck Building Inspector

EXHIBIT "F"



# Benedict A. Salanitro, P.E.

Civil Engineer
517 Linden Street
Mamaroneck, New York 10543

Telephone (914) 381-8055

14 June 2006

Mr. Ron Carpaneto, Director of Buildings
Town of Mamaroneck
740 W. Boston Post Road
Mamaroneck, New York 10543

Re: 2 Lafayette Road Greenwald Residence / Retaining wall

Dear Mr. Carpaneto,

With reference to the above captioned location, please be advised I have been retained by the Greenwald's to provide them with a visual Engineering Assessment of the rear retaining wall abutting their property which is apparently owned by #5 Huguenot Drive.

It is my understanding that the owner of the wall is seeking to make cosmetic repairs to this wall, which varies in height from approximately 8 feet to 15 feet. This wall , in my professional opinion, will require extensive repairs, and said repairs will need an access agreement between the neighbors and should be designed by a Licensed Engineer or Architect.

The wall is primarily a wet masonry stone construction, with an upper portion of cement masonry units approximately 4 feet high, resting vertically above the stone portion. There are obvious signs of distortion, de-lamination of stone, water damage, rusting of steel tiebacks and upper wall failure that I have noted in my inspection. It was also noted that a portion of the "added" masonry wall acts as a parapet for 5 Huguenot Drive, where the driveway meets this wall, vehicles park and water seems to pond against.

I recommend that the vehicles be refrained from parking adjacent to this upper portion of wall and that immediate structural repairs, designed by a Licensed Engineer or Architect, are performed without delay.

Should you have any questions on this matter please feel free to contact me.

Very truly yours,

Benedict A. Salanitro
Civil Engineer

EXHIBIT "G"

## FAX MEMO

**TO:**    Ron Carpaneto, Town Building Inspector, 914-381-7809

**C:**    Stephen V. Altieri, Town Administrator, 381-7809

**FROM:**    Anthony Oliveri, P.E., Project Manager    OCT 2 7 2004

**DATE:**    October 26, 2006

**SUBJECT:**    2 Lafayette Road – Retaining Wall

As requested we have observed the conditions with regard to the retaining wall in the rear yard of 2 Lafayette Road. The following are our observations and comments:

1.  The existing wall consists of a stone and mortar wall with a maximum height of approximately 15 feet and a concrete block extension to this wall built directly on top of the stone wall with a maximum height of approximately 5 feet, resulting in a maximum combined height of approximately 20'.

2.  The concrete block wall appears to have been built on top of the stone wall at some later undetermined date. This wall supports an asphalt parking area for the adjoining property on Huguenot Drive.

3.  The stone and mortar wall seems to be in generally acceptable condition, not exhibiting any bow or lean, however there is a vertical crack about midway along the length of the wall extending to the top of the stone wall. An attempt to stabilize this condition seems to have been made by the addition of metal tiebacks which are apparent by the presence of metal plates, bolted on either side of the crack. These tieback plates are severely rusted and their integrity is questionable.

4.  The concrete block wall sits atop the stone wall and does not seem to be original. A large gap exists along the joint of the block and stone walls. Multiple cracks along the joints can be seen as well as an obvious lean outward to the wall. In addition the wall has moved away from the face of the stone wall and overhangs it by at least 3 to 5 inches at one point. Apparently an attempt to stabilize this wall has also been made by the use of steel tiebacks; large plates and bolts are present on the face of the block wall. It is also possible that these tiebacks were original to the block wall construction.

Exhibit E    Exhibit F

**Dolph Rothfeld Engineering, P.C.**

5.    In addition a return section of the stone wall is topped by a poured concrete wall which appears to be straight and true and does not exhibit the distress of the block wall.

Our recommendation is that as soon as possible a *qualified structural engineer* be engaged to do a thorough evaluation of the structural integrity of the entire wall. Certainly there are obvious conditions that suggest the block wall has moved and its stability is very questionable.

The property owner should refrain from driving vehicles or any heavy loading within 10' of this wall until the investigation is completed.

Should you have any questions, please feel free to call.

Thank you,

2 Lafayette Road.doc

2 Lafayette Road
Retaining Wall

EXHIBIT "H"

1 Crossway   Scarsdale, NY 10583
Tel./Fax  (914) 725-5095

November 27, 2006

Ronald A. Carpeneto, Building Inspector
Town of Mamaroneck
740 West Boston Post Road
Mamaroneck, NY 10543-3345

Re: 5 Huguenot Drive - Larchmont, NY
     Rear yard retaining wall

Dear Ron:

On November 21, 2006 I visited 5 Huguenot Drive – Larchmont NY to observe the condition of
the rear yard retaining wall.  Following are my Observations, Conclusions, and
Recommendations.

Observations
    South facing retaining wall
    1.     The construction of the retaining wall consist of a mortared rubble stone varying
        in height from approximately 8'-8" to 13'-6" upon which a concrete block wall
        has been installed varying in height from approximately 2'-0" to 4'-8".  See
        Photographs 1 to 5.  The length of the retaining wall is approximately 56'-2".

    2.     The eastern third of the mortared rubble stone retaining wall has some type of tie-
        back system installed at 8 locations.  The steel plates and tie rods on the face of
        the mortared rubble stone retaining wall have severe corrosion.  See Photographs
        6 to 9 and 10 to 13 for the upper row and lower row. Respectively, from west to
        east.  Also, note that the steel plate is missing from Photographs 8 and 12.

    3.     The mortar joints of the mortared rubble stone retaining wall have been sloppily
        repaired and have numerous locations where efflorescence is visible.  See all the
        white staining on Photographs 1 to 5.  There are also at least 5 locations where
        mortar is missing from the mortar joint.

- 1 -

5.   The mortared rubble stone retaining wall has three vertical cracks, two at the top of the wall and one at the bottom. See Photograph 15 for the eastern top vertical crack and the bottom vertical crack. The portion of the mortared rubble stone retaining wall to the left of the eastern to vertical crack has also displaced outward from the wall approximately ½" The western top vertical crack in not visible in Photograph 15 and is located approximately 1'-4' beyond the left edge. In Photograph 3 the western top vertical crack is a continuation of the vertical crack in the concrete block retaining wall located to the left of the left steel tie-back plate.

6.   The top of the mortared rubble stone retaining wall between the two top vertical cracks is bowing outward.

7.   The concrete block retaining wall has had some type of tie-back system installed at four locations. See Photographs 1 to 5. The steel plates visible on the face of the concrete block retaining wall have minor surface corrosion.

8.   The concrete block retaining wall has slid off the top of the mortared rubble stone retaining wall along an approximately 16'-0" long section. The amount of sliding varies from 0" to approximately 2" and back to 0". See Photographs 16 and 17.

9.   The concrete block retaining wall has many cracked or open mortar joints. See Photographs 18 to 24.

10.  The concrete block retaining wall has two vertical cracks and one stepped crack. See Photographs 25 to 27, respectively.

11.  Two concrete blocks at the bottom end of the stepped crack are significantly displaced. See Photograph 28.

12.  The top of the concrete block retaining wall leans forward 1"+ between the second and third tie-back plates.

While observing the south facing retaining wall the south end of the east facing retaining wall was also observed.

1.   The construction of the east facing retaining wall consist of  a mortared rubble stone wall approximately 10'-6" high upon which a poured concrete wall has been installed approximately 4'-8" high. See Photograph 29. The poured concrete retaining wall was placed against the concrete block retaining wall at the southeast corner, see Photograph 30, given that the concrete follows the irregular edge of the concrete block.

- 2 -

The east facing mortared rubble stone retaining wall has had some type of tie-back system installed at three locations. The steel plates and tie rods visible on the face of the mortared rubble stone retaining wall have severe corrosion. See Photographs 31 to 33.

3.      A vertical crack exist on the east facing mortared rubble stone retaining wall within 2'-6" of the southeast corner. See Photograph 34. This crack indicates that the south facing mortared rubble stone retaining wall moved south approximately 1".

Conclusions

1.      Given the amount of corrosion observed on the tie-back system installed through the mortared rubble stone retaining walls and that two of the steel plates have fallen off the wall it is my professional opinion that the tie-back system no longer has the intended structural capacity to stabilize the mortared rubble stone retaining walls.

2.      Given the amount of efflorescence on the mortared rubble stone retaining wall it is apparent that water is seeping through the original mortar joints. This indicates that the original mortar joints are either deteriorated, and/or, cracked and therefore are no longer bonding the rubble stones together. Given that the structural integrity of a rubble stone wall relies on the mortar to bond the stones together it is my professional opinion that the structural integrity, and safety, of the mortared rubble stone retaining wall is questionable.

3.      Given:
        a.      the amount of cracked or open mortar joints,
        b.      the two vertical cracks and the one stepped crack,
        c.      the approximately 2" of lateral displacement, and
        d.      the 1"+ lean

        it is apparent that the concrete block retaining wall has undergone significant, and unusual, displacement. While a tie-back system has been installed to stabilize the concrete block retaining wall it is my professional opinion that the tie-back system is inadequate. The tie-backs are spaced to far apart for the concrete block wall to safely span between them.

Recommendations

1.      The corroded tie-back system installed on the mortared rubble stone retaining wall shall be repaired by replacing all corroded steel with like-kind elements which are hot dip galvanized.

2.      All the mortar joints with efflorescence on the mortared rubble stone retaining wall shall be removed to observe the condition of the original mortar joint. All deteriorated mortar shall be removed and replaced with Type N mortar. All cracked mortar joints shall be filled with epoxy injected into the crack.

- 3 -

3.    All locations of missing mortar and/or stones in the mortared rubble stone retaining wall shall be filled with Type N mortar. Also, all cracked mortar joints shall be filled with epoxy injected into the crack.

4.    Additional tie-backs shall be installed into the concrete block retaining wall so that the concrete block can safely span between the tie-backs. All new tie-backs shall be made with steel elements that have been hot dip galvanized. All the existing steel plates shall be removed and painted with two coats of cold galvanizing.

5.    All broken concrete blocks shall be replaced. All cracked or open mortar joints shall be pointed with Type N mortar on both sides of the wall.

6.    The two significantly displaced concrete blocks shall be replaced to prevent them from falling off the wall.

7.    The vegetation growing out of the wall shall be killed with a herbicide and then cut back to the face of the wall.

8.    The open joint between the mortared rubble stone and concrete block retaining wall shall be filled with Type N mortar.

9.    All the vegetation growing over the wall shall be killed with a herbicide and not allowed to grow back.

Until all the recommendations are completed it is my professional opinion that the south face of this retaining wall is dangerous and:

a.    a construction fence shall be installed to prevent access to the upper tier of the rear yard of 2 Lafayette Road, and

b.    the retaining wall shall be monitored four times a year in January, March, May, and September. If evidence of new movement is observed a bracing system shall be installed a.s.a.p.

If you have any questions please give me a call at 914-725-5095.



- 4 -

# EXHIBIT "I"

## APPLICATION FOR ADDITION AND ALTERATIONS TO EXISTING BUILDING

Application is hereby made to the Building Department of the Town of Mamaroneck, for the approval of the detailed statement of specifications and plans herewith submitted for the addition or alteration of the building herein described. All provisions of the Building Code shall complied with in the erection of said building whether specified herein or not.

In making the application for the approval of plans the following drawings must be furnished: Plans of all floors, including cellar basement: elevation showing height of stories, longitudinal or transverse section, or both if necessary; all plans must be drawn to a uniform scale not than one-quarter inch to the foot, and proposed new work must be clearly distinguished from old by conventional methods, building line or lines must clearly and distinctly indicated on the drawings; give lot and block numbers of premises, also diagram of same.

| Location of Building | 5 Huguenot Drive | | | | | Zone District | 7.5 | |
|---|---|---|---|---|---|---|---|---|
| Section | 1 | Block | 130 | Parcel | 415 | Value of Proposed Work | 10,000 | |
| Size of Project | Area (sq.ft.) | | | Length | | Width | | Height |
| Location in Relation to Existing Building | Rear Yard. | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Existing Front Setback | | Proposed | Existing Height of Building | | Proposed |
| Existing Sideline | | Proposed | Lot Coverage (ALL Impervious Areas) | % | Proposed |
| Existing Sideline | | Proposed | Existing Total Both Side Yards | | Proposed |
| Existing Rear Yard | | Proposed | No. of Stories Existing | | Proposed |
| Size of Lot: Frontage | ft. | Width | ft. | Depth | ft. Area | sq. |
| Use of Premises or No. of Families | | Existing | | Proposed | |
| Will There be Additional Plumbing Fixtures? (Yes)__ (No) ✓ How Many? | | | Will There be Electrical Work? (Yes)__ (No) | | |

Description of Project: Remove secondary section wall and excavate behind existing stone wall. Reconstruct with concrete and reinforcing to same height. Remove pavement a least five (5) feet. Extend height of short stone wall in southeastern area to level grade. Install drains and retention units.

| | NAME | ADDRESS | TELEPHONE # |
|---|---|---|---|
| OWNER | JANE EVANS Douglas Mason 5 Huguenot Dr. Larchmont | | 914 630 1253 |
| ARCHITECT PE | Vincent Masuci, 443 Westchester Ave, White Plains, NY 10604 | | 914-761-3102 |
| BUILDER | MICHEAL BEL ANTONI | | |
| HOME IMPROVEMENT LICENSE # | | | |
| PLUMBER | | | |

Applicant/Owner (sign here) _Jane M Evans_ being duly sworn deposes and says

That he/she is the applicant named above; that he/she has read the foregoing application and knows the content to be true except those which are stated o information and belief and as to those matters he/she believes to be true.

**NOTE:** *A Certificate of Occupancy and an Electrical Certificate of Approval are required prior to occupancy or use the structure or affected areas.*

Filing Fee _____        Permit Fee _____

State Environmental Quality Review
# SHORT ENVIRONMENTAL ASSESSMENT FORM
### For UNLISTED ACTIONS Only

**PART I - PROJECT INFORMATION (To be completed by Applicant or Project Sponsor)**

| 1. APPLICANT/SPONSOR | 2. PROJECT NAME |
|---|---|
| JANE M. EVANS | xxxxx |

3. PROJECT LOCATION:

| Municipality | Town of Mamaroneck | County | Westchester |
|---|---|---|---|

4. PRECISE LOCATION (Street address and road intersections, prominent landmarks, etc., or provide map)

5 Huguenot Drive Larchmont NY. 10538
914 630 1253

5. PROPOSED ACTION IS:
☐ New    ☐ Expansion    ☑ Modification/alteration

6. DESCRIBE PROJECT BRIEFLY:

Repair retaining wall

7. AMOUNT OF LAND AFFECTED:
Initially _____ acres    Ultimately _____ acres

8. WILL PROPOSED ACTION COMPLY WITH EXISTING ZONING OR OTHER EXISTING LAND USE RESTRICTIONS?
☑ Yes    ☐ No    If No, describe briefly

9. WHAT IS PRESENT LAND USE IN VICINITY OF PROJECT?
☑ Residential    ☐ Industrial    ☐ Commercial    ☐ Agriculture    ☐ Park/Forest/Open Space    ☐ Other
Describe:

10. DOES ACTION INVOLVE A PERMIT APPROVAL, OR FUNDING, NOW OR ULTIMATELY FROM ANY OTHER GOVERNMENTAL AGENCY (FEDERAL, STATE OR LOCAL)?
☑ Yes    ☐ No    If Yes, list agency(s) name and permit/approvals:

11. DOES ANY ASPECT OF THE ACTION HAVE A CURRENTLY VALID PERMIT OR APPROVAL?
☐ Yes    ☑ No    If Yes, list agency(s) name and permit/approvals:

12. AS A RESULT OF PROPOSED ACTION WILL EXISTING PERMIT/APPROVAL REQUIRE MODIFICATION?
☐ Yes    ☑ No

**I CERTIFY THAT THE INFORMATION PROVIDED ABOVE IS TRUE TO THE BEST OF MY KNOWLEDGE**

Applicant/sponsor name: JANE M. EVANS    Date: 17 Sept '07

Signature: Jane M Evans

---

**If the action is in the Coastal Area, and you are a state agency, complete the Coastal Assessment Form before proceeding with this assessment**



RTH PRESSURE

INADEQUATE DESIGN AT 43'
BASE FOR A GRAVITY WALL

EXISTING WEEP
HOLE DRAINS

EXISTING GRADE

2'-8 3/16"

# SECTION FOR EXISTING STONE RETAINING WALL
## SCALE 1/4" = 1'-0"

NOTE:  EXISTING WALL HAS CRACKS AND
BLOCK WALL IS LEANING FORWARD.
EXISTING WALL HAS TIEBACKS THAT HAVE
RUSTED.  STONE WALL THICKNESS MEASURES
ABOUT 30" IN DEPTH AND WALL APPEARS TO
BEAR ON ROCKLEDGE BELOW.

**PROPOSAL TO REINFORCE EXISTING RETAINING WALL**

| **EVANS/MASON RESIDENCE** | | |
|---|---|---|
| **5 HUGUENOT DRIVE** | | |
| **LARCHMONT, N.Y.** | | |
| SCALE: | APPROVED BY: | DRAWN BY |
| DATE: 06/11/2007 | | REVISED |

**PROPOSED STORMWATER MANAGEMENT FOR**

SEP 1 7 2007

# EXISTING STONE WALL CACULATIONS (without upper block wall):

W(1) = 18"/12"/' X 10' X 150PCF = 2250 PLF (First section of wall)

W(2) = 14"/12"/' X 10' X ½ X 150PCF = 875 PLF (Second section of wall)

W (total) = 3125 PLF

P ((h) = 50# X 0.286 = 14.3 PSF (soil surcharge pressure)

P =    A x 33.3 PSF x h = 10 x 33.3 x 10'/2 = (horizontal force).

P (total) = 1665 + 14.3 x 10' = 1808 PLF

**Overturning Moment at point "A"**

1808 x 10/3 =   6027 ft-lbs

**Resisting Moment at point "A"**

R =  2250 x 18/2/12 + 875 x 25/12 = 1688 + 1823 = 3511 ft-lbs.

**FACTOR OF SAFETY = 3511 / 6027 = 0.58 which is less than 1.5 minimum. Therefore, the existing wall is not stable and requires ADDITIONAL reinforcing.**



PROPERTY LINE

11'

1'-6"

EXISTING CHAIN LINK FENCE

EXISTING GRADE
ASPHALT PAVEMENT

4'-8'

ADDED BLOCK WALL
AND EARTH SURCHARGE
(WALLS ARE LEANING
FORWARD).

ADDITIONAL SURCHARGE
FROM PARKING AND
FILL

SEP 1 7 2007

# SPECIAL NOTATIONS:

1  USE EXISTING DRIVEWAY FOR ACCESS OF EQUIPMENT.  MAINTAIN ROADWAY CLEAN OF DIRT AND DEBRIS.

2  MAINTAIN MINIMUM TEN (10) FOOT SETBACKS FOR ANY RETENTION UNITS INSTALLED.

3  ALTERATIONS WILL NOT INCREASE  GRADING TOWARD ADJACENT PROPERTIES.

4  SOIL TO BE STABILIZED FROM EROSION.

5  EXISTING STONE WALL HAS A MAXIMUM HEIGHT OF TEN (10) FEET WITH A BLOCK WALL ON TOP FOR AN ADDITIONAL 4'-8" PART OF WHICH IS A 22" PARAPET WALL FROM THE ASPHALT TO THE TOP.  A CHAIN LINK FENCE IS ON TOP OF THE BLOCK WALL. THE BLOCK SECTION OF THE WALL SHOWS SIGNS OF BULGING WHILE THE EXISTING STONE WALL BELOW HAS CRACKS AND TIE RODS PENETRATING THE EARTH  BEHIND THE WALL. THESE TIE ANCHOR RODS ARE RUSTING THROUGH AND ARE NO LONGER RELIABLE.   MEASUREMENTS WERE TAKEN OF THE WALL BY MEANS OF THE WEEP HOLES AT THE BASE.  IT APPEARS THAT THE WALL THICKNESS MAY ONLY BE A MAXIMUM OF 32".   CALCULATIONS FOR OVERTURNING FOR A GRAVITY WALL WITHOUT THE ADDITIONAL SURCHARGE OF THE BLOCK EXTENDED WALL ABOVE AND THE SURCHARGE FROM THE VEHICLE PARKING AND ANGLE OF INCLINE WOULD FAIL THE FACTOR OF SAFETY TEST.  A SIMPLE FIX OF THE UPPER WALL WOULD NOT BE ENOUGH.

6  IT IS RECOMMENDED THAT THE BLOCK WALL BE REMOVED , AN ADDITIONAL FIVE (5) FEET OF STONE WALL BE REMOVED AND THE REMAINING WALL EXCAVATED TO PROVIDE FOR A POURED CONCRETE BASE AND CAP THE EXISTING STONE WALL WITH REINFORCING RODS.

7  AN ADDITIONAL REINFORCED CONCRETE WALL TO BE POURED 18" THICK WITH WEEP HOLES. A GRAVEL BASE WITH GEOTECK FABRIC ON TOP TO ALLOW FOR A SOIL PLANTER AREA AND A GRAVEL BASE WITH DRIVEWAY DRAIN ALLOWING FOR PVC PIPES TO DIRECT WATER INTO A RETENTION AREA IN THE REAR YARD WHERE THE RETAINING WALL IS ONLY ABOUT FIVE (5) FEET IN HEIGHT.

8  THE CONTRACTOR AND OWNER SHALL OBTAIN WRITTEN PERMISSION FROM THE ADJACENT PROPERTY BELOW TO PROTECT, MAINTAIN AND RESTORE PROPERTY FROM ANY DAMAGE DUE TO CONSTRUCTION. SOIL STORAGE ON SITE TO BE PROTECTED FROM ERODING ONTO ADJACENT PROPERTIES.

9  CONTRACTOR TO SECURE SITE WHILE EXCAVATING AND PROTECT WORKERS AND THE BUILDING STRUCTURE FROM SOIL SHIFTING BY SHORING, COVERING AND ALL OTHER RECOGNIZED STANDARDS.  NO WORKERS ARE TO ENTER AN EXCAVATED AREA FOUR FEET OR IN DEPTH WITHOUT THE SOIL BEING FIRST SECURED.

SECTION "B-B"

SCALE 1/4" = 1'-0"

**PROPOSAL TO REINFORCE EXISTING RETAINING WALL**

**EVANS/MASON RESIDENCE**
**5 HUGUENOT DRIVE**
**LARCHMONT, N.Y.**

| SCALE: 1" = 20' | APPROVED BY: | | DRAWN BY |
|---|---|---|---|
| DATE: 06/11/2007 | | | REVISED |

| VINCENT J. MASUCCI, P.E. | DRAWING NUMBER 102 |
|---|---|

EXHIBIT "J"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------x

GARY R. ROTENBERG and JANE J. DICKSON,

                    Plaintiff(s),

     -against-

THE TOWN OF MAMARONECK, RONALD A.
CARPANETO, (individually), JAYNE GREENWALD
and BLAINE GREENWALD

               Defendant(s).

-------------------------------------------------------------x

Index No.: 12167/07

**AFFIDAVIT OF
RONALD A. CARPANETO**

STATE OF NEW YORK    )
                  : SS
COUNTY OF WESTCHESTER)

     **RONALD A. CARPANETO**, being duly sworn deposes and says:

     1.     I am the Director of Building Code Enforcement and Land Use Administration for the Town of Mamaroneck and have held that position for 10 years.

     2.     I submit this affidavit based on my knowledge of the facts and circumstances surrounding the claims being made against me and the Town, as well as the documents involved in this matter.

     3.     I submit this affidavit in support of the motion being made by counsel on behalf of myself and the Town to dismiss the plaintiffs' complaint.

     4.     As part of my duties and responsibilities as the Director of Building Code Enforcement and Land Use Administration, I respond to complaints made by concerned citizens regarding issues in the Town. I help to protect the safety of Town residents and add to residents' quality of life by helping to ensure compliance with municipal regulations. I am

Exhibit A     Exhibit B     Exhibit C     Exhibit D     Exhibit E     Exhibit F

authorized by the Town to issue Notices of Violation. In the event that the Notices are not corrected, I am authorized by the Town to issue a Summons.

5.      Sometime in April 2006, I was contacted by Jayne and Blaine Greenwald because they were concerned about the structural integrity of the retaining wall located between the Greenwald's property located at 2 Lafayette Road and the property formerly owned by the plaintiffs (hereinafter "the Rotenbergs"), located at 5 Huguenot Drive.

6.      There is no dispute that the wall is located on the Rotenbergs' property, 5 Huguenot Drive.

7.      After several visits to the property, I determined, based on a visual inspection, that the wall did not appear safe and could potentially cause damage to the Greenwald's property or worse, result in personal injury.

8.      The wall, which is approximately 20' high, is made partially of stone on the lower half and cinderblock on the upper portion. There is some cracking in the lower portion where water comes through. But my main concern was that the top portion shifted out over the edge of the stone and there was a difference of four or fire inches on the face of the wall. The wall appeared to be leaning. Also, the tie backs were rusted.

9.      Based on my opinion that it was in the public's interest that the wall be repaired, I issued a Notice of Violation, dated June 23, 2006 to the Rotenbergs. A copy of the Notice is annexed hereto as Exhibit A.

10.     The Notice of Violation indicated a violation of NY State Code PM302.7 in that all Accessory Structures, including walls, must be maintained structurally sound and in good repair.

2

11.   Although the Notice gave the plaintiffs until July 3, 2006 to remedy the condition, in fact the Town gave them much more time. It was not until September 29, 2006 that a Final Notice was sent to the Rotenbergs. A copy of the Notice is annexed hereto as Exhibit B.

12.   The Rotenbergs made no effort to correct the problem or contact the Town to discuss the matter.

13.   On October 17, 2006, a summons was issued by the Town to the Rotenbergs for their failure to correct the Violation. A copy of the Summons is annexed hereto as Exhibit C.

14.   At around the time the plaintiffs hired John Annunziata, P.E., P.C. who submitted a report (copy attached hereto as Exhibit D) that the wall was stable, the Town hired Anthony Oliveri, P.E. to examine the wall. A copy of Oliveri's report dated October 26, 2006 is annexed hereto as Exhibit E. Oliveri advised that a qualified structural engineer should evaluate the wall. He found the wall's stability to be questionable.

15.   On November 20, 2006, a hearing was held and the Violation was dismissed. (A copy of the transcript is annexed hereto as Exhibit F).

16.   Although the Judge dismissed the Violation, she did indicate that the wall looks troubling to her (Exhibit F, p. 171, line 2), that the condition will not improve over time (Exhibit F, p. 173, lines 11-13) and the parties should work together to correct the problem. Furthermore, she suggested that the Town continue to "keep an eye" on the property. (Exhibit F, p. 173, lines 10-12).

3

Exhibit A      Exhibit B      Exhibit C      Exhibit D

17.     On November 21, 2006, structural engineers Grigg & Davis Engineers, P.C., visited the premises and prepared a report. A complete copy of the report is annexed hereto as Exhibit G.

18.     The report gives specific details of the structural problems with the wall and specific recommendations on what needs to be done to make the wall safe. Until the recommendations are complied with, Grigg and Davis opines that the wall is dangerous.

19.     The Violation and the Summons issued to the Rotenbergs were not intended to harass or harm the Rotenbergs. My sole intention was to make sure that necessary repairs were made to the wall so that there was no injury to people or property.

20.     I did not know that the Rotenbergs had a contract to sell their house and I had no intention of interfering with the sale of their property.

21.     I did not personally know either the Rotenbergs or the Greenwalds prior to this matter and did not confer with either couple before issuing the Violation or the Summons to the Rotenbergs.

22.     Based on the above, the Rotenbergs have failed to set forth any viable claims against me or the Town and their complaint should be dismissed accordingly.

RONALD A. CARPANETO

Sworn to before me this 13th
day of September, 2007.

NOTARY PUBLIC

MICHELLE T. IANNARELLI
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01IA6165425
QUALIFIED IN WESTCHESTER COUNTY
MY COMMISSION EXPIRES MAY 7, 20__

4

EXHIBIT "K"

To: **Gary & Jane Rotenberg**

Address: **5 Huguenot Drive**

City: **Larchmont, NY 10538**

You are hereby directed to appear before the presiding Justice of the Town Court of Mamaroneck, at the Court house at 740 W. Boston Post Road, New York at **7:00 pm**    O'Clock.

of the: **30th** day of **October** , **2006** , to answer the charge

that on the **3rd** day of **July** , **2006** at _____

**5 Huguenot Drive** Block: **130**    Lot: **415**

You did committ a violation of **Property Maintenance Code 302.7 of New York State - Accessory Structures - All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.**

of the Town of Mamaroneck
Upon your failure to appear a warrant may be issued for your arrest.

Date: **October 17** , **2006**    Issued By: _____

Title: **Building Inspector**

**Exhibit D**

STATE OF NEW YORK : COUNTY OF __WESTCHESTER__

__TOWN__ COURT__ __TOWN__ OF __MAMARONECK__

The People of the State of New York

against

Gary & Jane Rotenberg

_____ Defendant

Information

Ronald Carpaneto, Director of Building _____ with offices _____, residing

740 W. Boston Post Road, Mamaroneck, New York 10543 _____, by this information mak-

written accusation as follows:

That __Gary & June Rotenberg__ _____, on the __3rd__ _____

day of __July__ _____, __2006__, at __5 Huguenot Drive__

(Location)

in the __Town__ _____ of __Mamaroneck__ _____

County of __Westchester__ _____, New York, c

commit the offense of __Property Maintenance - Accesory Structures__ _____

_____ , a (misdemeanor) (violation) in violation of Section __302.7__

of the __NYS Prop. Maint.__ _____ Law of the State of New York, in that (s)he did, at the aforesaid time and plac

Count One:

The facts upon which this information is based are as follows:

July 3, 2006        - Violation Issued
September 29, 2006  - Final Notice of Violation Issued
October 17, 2006    - Summons Issued

**Exhibit D**

## **LIST OF EXHIBITS**

A   Federal Complaint

B   State Complaint

C   Decision of Hon. Richard Liebowitz dated January 16, 2008

D   Photographs

E   Greenwald letter dated April 14, 2006

F   Benedict Salanitro report dated June 14, 2006

G   Anthony Oliveri report dated October 26, 2006

H   Grigg & Davis report dated November 26, 2006

I   Vincent Masucci report dated June 11, 2007

J   Ronald A. Carpento affidavit dated September 13, 2007

K   Summons and Information

L   Transcript of trial held in Town of Mamaroneck Court